RONALD TYLER *v.* GEORGE D. BRONSON, WARDEN
(4935)

BORDEN, DALY and O'CONNELL, Js.

Argued October 9—decision released November 17, 1987

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (petitioner).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Steven Sellers,* assistant state's attorneys for the appellee (respondent).

BORDEN, J. The petitioner appeals from a judgment dismissing his petition for a writ of habeas corpus. The sole relief sought in the habeas proceeding was an order granting him the right to file a late appeal of his conviction. The issue in this appeal is whether the trial court erred in concluding that the petitioner had for-

feited his appellate rights, where he received no actual notice of his right to appeal because he had absented himself from his jury trial, and from the sentencing which followed the verdict of guilty. We find no error.

The facts are undisputed. In November, 1984, the petitioner, who was free on bond, was tried for the crime of assault in the first degree. He failed to appear in court during the course of his jury trial. After an unsuccessful attempt to locate the petitioner, the trial court, *Moraghan, J.*, determined that he had knowingly, intelligently and voluntarily absented himself to avoid prosecution and thereby waived his right to be present at his trial. The court ordered his bond forfeited and issued a rearrest warrant. The trial proceeded, and the petitioner was found guilty in absentia.

When the petitioner did not appear for sentencing in December, 1984, the court found that he knowingly waived his right to be present and sentenced him in absentia to a twenty year term of imprisonment. The petitioner was represented by counsel throughout these proceedings and, at the time of sentencing, the court clerk delivered to the petitioner's counsel notices of his rights to appeal and to sentence review.

The petitioner remained a fugitive for nearly two months after the imposition of sentence. No appeal was filed within the time prescribed by General Statutes § 54-95 and Practice Book § 3007 (now § 4009). In February, 1985, the petitioner surrendered himself to the authorities and began serving the sentence imposed on the assault conviction.[1]

---

[1] The petitioner later pleaded guilty to a charge of failure to appear, in violation of General Statutes § 53a-172, as a result of his wilful failure to appear at his trial proceedings. He was sentenced to an additional term of imprisonment, to be served consecutively to the sentence for assault. The failure to appear charge is not involved in this appeal.

Thereafter, the petitioner filed this petition for a writ of habeas corpus. The habeas court, *Barry, J.,* dismissed his petition after concluding that by "fleeing the jurisdiction, [the petitioner] has clearly forfeited and deliberately bypassed his appellate rights." This appeal followed.[2]

Where a petitioner seeks habeas corpus relief in the nature of permission to file a late appeal of his conviction, the relief may be denied where the petitioner has deliberately bypassed timely appellate review of the conviction. *Paulsen* v. *Manson,* 193 Conn. 333, 337–38, 476 A.2d 1057 (1984); *D'Amico* v. *Manson,* 193 Conn. 144, 147–48, 476 A.2d 543 (1984); *Staton* v. *Warden,* 175 Conn. 328, 398 A.2d 1176 (1978). The deliberate bypass rule furthers the goal of the orderly administration of justice. *Paulsen* v. *Manson,* supra; *Cajigas* v. *Warden,* 179 Conn. 78, 82–83, 425 A.2d 571 (1979).

The petitioner relies on a long line of established case law which holds that a deliberate bypass of direct review of a criminal conviction requires a finding "that the petitioner knowingly, intelligently and voluntarily waived his right to appeal." (Citation omitted.) *Russo* v. *Lopes,* 12 Conn. App. 343, 345, 530 A.2d 667 (1987); see also *D'Amico* v. *Manson,* supra, 147; *Talton* v. *Warden,* 171 Conn. 378, 385, 370 A.2d 965 (1976). That line of cases derives from the traditional rule that, ordinarily, waiver of a fundamental right involves "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). The petitioner argues that, because he was not given personal notice of his right to appeal, he could not have voluntarily or knowingly waived that right, and that he therefore has

---

[2] Shortly after this appeal was filed, the respondent filed a motion in this court for permission to file a late appeal directly from his conviction. See *State* v. *Stead,* 186 Conn. 222, 440 A.2d 299 (1982). That motion was denied.

not deliberately bypassed a direct appeal of his conviction. We disagree.

The rule of law set forth in the cases relied on by the petitioner does not apply to the unique facts of this case. Those cases assume a criminal defendant who was present at the time he gave up his right to appeal. Their reasoning is premised upon a habeas petitioner who was either a misinformed participant in the waiver of his appellate rights; see, e.g., *Russo* v. *Lopes,* supra; or an uninformed participant in such a waiver. See, e.g., *D'Amico* v. *Manson,* supra; *Staton* v. *Warden,* supra, 331.

A close reading of those cases which relied on *Johnson* v. *Zerbst,* supra, shows that the waiver analysis used therein requires a criminal defendant who is present at the time the right is waived. Such cases inquire whether specific and correct information was conveyed directly to the defendant so as to serve as a sufficient basis for a waiver of his appellate rights. That inquiry clearly assumes a criminal defendant who is at least a nominal participant in the judicial process by his presence before the court.

Here, of course, the petitioner was on the run at the time he was required to file an appeal. As the habeas court noted, "[i]t is to state the obvious to say that the petitioner's present predicament regarding his appellate rights is the result of his own conduct." The petitioner's voluntary absence from his trial and sentencing, therefore, is the critical fact which distinguishes this case from those cases using traditional constitutional waiver analysis.

Our case law has recognized that a criminal defendant's flight from custody brings with it special rules of forfeiture with respect to pending appellate proceedings. In *State* v. *Leslie,* 166 Conn. 393, 349 A.2d 843 (1974), our Supreme Court dismissed the appeal of a

criminal defendant who had escaped and was still a fugitive when his appeal was heard. The United States Supreme Court has approved similar rulings in state and federal cases. See, e.g., *Estelle* v. *Dorrough,* 420 U.S. 534, 95 S. Ct. 1173, 43 L. Ed. 2d 377 (1975) (per curiam); *Molinaro* v. *New Jersey,* 396 U.S. 365, 90 S. Ct. 498, 24 L. Ed. 2d 586 (1970) (per curiam); *Smith* v. *United States,* 94 U.S. 97, 24 L. Ed. 32 (1876). These cases illustrate that an appellate court may refuse to hear a pending criminal appeal where the defendant has escaped from custody or refused to surrender himself, without the necessity of engaging in traditional constitutional waiver analysis. The reason for this rule is that the defendant's abandonment of the orderly process of judicial administration under these circumstances justifies the conclusion that a forfeiture has occurred. Cf. *State* v. *Drakeford,* 202 Conn. 75, 81, 519 A.2d 1194 (1987) (a defendant who deliberately leaves the courtroom after his trial has begun forfeits his right to be present at trial and cannot be allowed to claim any advantage because of his absence).

We see no reason why the disentitlement rule, adopted in *State* v. *Leslie,* supra, should not apply to the facts of this case, where the petitioner's conduct indicated a complete disregard for the orderly process of a criminal trial and timely appellate review.[3] We conclude that the petitioner's failure to appeal his conviction in a timely manner amounted to a forfeiture of his

---

[3] The petitioner argues that the trial court's conclusion, which we approve here, would completely prevent appellate review under these circumstances, notwithstanding egregious constitutional error by the trial court, such as a directed verdict of guilty after the defendant's failure to appear. We do not share the petitioner's fear. Just as our rules of practice permit appellate review despite procedural default; see Practice Book § 4185 (plain error rule); our decision in this case is not so broad or absolute as to preclude appellate review to remedy such a gross abuse of the right to a fair trial. No such circumstances are alleged here.

appellate rights, because his failure to appear at trial and sentencing was an act completely within his control, and that act clearly manifested his abandonment of the legal process.

There is no error.

In this opinion the other judges concurred.