******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* STACEY DAYTON
(AC 38860)

DiPentima, C. J., and Beach and Sheridan, Js.*

*Syllabus*

Convicted, on pleas of nolo contendere, of the crime of operating a motor
vehicle while under the influence of intoxicating liquor or drugs, and
with previously having been convicted of that offense, the defendant
appealed to this court, challenging, inter alia, the trial court's denial of
his motion to dismiss. After the trial court had accepted the defendant's
pleas and made a finding of guilty, at the defendant's request the sentenc-
ing was continued to a later date. The defendant failed to appear at
sentencing and the court ordered his rearrest. Approximately eight years
later, the court vacated the rearrest order and the case was "closed
out" pursuant to statute (§ 14-140 [b]). Ten years later, the state entered
a nolle prosequi as to the defendant's case, and the court noted the
nolle for the record. More than thirteen months after the nolle had been
entered, the state requested that the case be redocketed. The defendant
filed a motion to dismiss, to which the state objected, and, after a hearing,
the court denied the motion, finding that the state had mistakenly nolled
the case. The court, relying on the previously accepted plea canvass,
proceeded to sentencing, and this appeal followed. *Held*:

1. The state could not prevail on its claim that the defendant's appeal
should be dismissed on the basis of the common-law fugitive felon
disentitlement doctrine, which allows an appellate court to dismiss the
appeal of a party who flees subsequent to the felony conviction from
which he appeals; the appellate process had not been prejudiced, due
to the passage of time, as a result of the defendant's failure to appear
at his initial sentencing proceeding, and, under these facts and circum-
stances, dismissal of the appeal under the fugitive felon disentitlement
doctrine was not warranted.

2. The trial court improperly denied the defendant's motion to dismiss; that
court lacked jurisdiction over the case after the state entered the nolle
and failed to initiate a new prosecution, and because more than thirteen
months had passed since the entry of the nolle, the records of the case
were subject to erasure by operation of law; moreover, the court, which
found that the state had mistakenly nolled the case, cited no authority
to support its decision to invalidate a nolle that had been entered more
than thirteen months earlier, and the state's claim that the court merely
corrected a clerical error when it denied the motion to dismiss was
unavailing, as the effect of the state's decision to nolle the case resulted
in the termination of the proceedings against the defendant, and to
subsequently revive the charge was a matter of substance, not a mere
transcription or calculation clerical error.

Argued April 24—officially released October 3, 2017

*Procedural History*

Two part information charging the defendant, in the
first part, with the crimes of operating a motor vehicle
while under the influence of intoxicating liquor or drugs
and evading responsibility, and with the infractions of
following too closely, failure to comply with emission
inspection, and failure to use a seat safety belt, and, in
the second part, with having previously been convicted
of operating a motor vehicle while under the influence
of intoxicating liquor or drugs, brought to the Superior
Court in the judicial district of Fairfield, geographical
area number two, where the defendant was presented
to the court, *Leavitt, J.*, on pleas of nolo contendere
to the charge of operating a motor vehicle while under

the influence of intoxicating liquor or drugs in the first part of the information and to the second part of the information; thereafter, the state entered a nolle prosequi as to evading responsibility, following too closely, failure to comply with emission inspection, and failure to use a seat safety belt; subsequently, the state entered a nolle prosequi as to all of the charges; thereafter, the court, *E. Richards, J.*, denied the defendant's motion to dismiss and rendered judgment in accordance with the pleas, from which the defendant appealed to this court. *Reversed; judgment directed.*

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Margaret E. Kelley*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Stacey Dayton, appeals from the judgment of conviction, rendered after a plea of nolo contendere, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 1995) § 14-227a.[1] On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss, and (2) accepted his plea when it was not knowingly, intelligently or voluntarily made. The state disagrees with the defendant on the merits of this appeal and also contends that this appeal is subject to dismissal pursuant to the fugitive felon disentitlement doctrine. We disagree that this appeal should be dismissed and agree with the defendant's first claim. Accordingly, we reverse the judgment of the trial court.[2]

The following facts and procedural history are relevant to the resolution of this appeal. On November 29, 1995, the defendant entered a plea of nolo contendere to the charge of operating a motor vehicle under the influence of intoxicating liquor or drugs. General Statutes (Rev. to 1995) § 14-227a; see footnote 1 of this opinion. At that proceeding, the court found that the plea was "voluntarily and understandingly made with the assistance of competent counsel. There's a factual basis for the plea. The plea is accepted. Finding of guilty." Pursuant to a plea agreement, the defendant would receive a sentence of one year incarceration, execution suspended after ten days, two years of probation and certain special conditions. This sentence was not imposed immediately, as the court acquiesced to the defendant's request to continue the matter.

On January 3, 1996, the defendant failed to appear at sentencing. The court ordered the defendant rearrested and set a cash bond in the amount of $500. No further actions occurred in the defendant's case for nearly eight and one-half years. In 2004, the court vacated the rearrest order, and the case was "closed out" pursuant to General Statutes § 14-140 (b).[3] Ten years later, in 2014, the state entered a nolle prosequi as to the defendant's case.[4] The court noted the nolle prosequi for the record.

On September 4, 2015, more than thirteen months after the nolle had been entered, the state requested that the defendant's case "be brought back to court." The prosecutor represented to the court that notice had been sent to the defendant's last known address informing him of the proceeding, but that he was not present. The court agreed to the prosecutor's request to have a bail commissioner's letter sent to the defendant.

On October 29, 2015, the defendant filed a motion to dismiss pursuant to General Statutes § 54-56[5] and Practice Book § 41-8 (4).[6] The state filed a motion in opposition on November 9, 2015.[7] The court held a hearing on December 3, 2015, at which time it rendered

an oral decision denying the defendant's motion. Specifically, it stated: "The court's feeling is that under the circumstances in this case where a plea has been canvassed, accepted by the court, where there was a failure to appear at the time of sentencing, where a rearrest was ordered, but the subsequent nolle in this case was a mistake and therefore not valid. And therefore I am going to find that the motion to dismiss is not proper and I'm going to deny it at this time. . . . I think the court has jurisdiction because I feel that . . . the nolle which allowed the case to ripen it into a dismissal was invalid. That therefore, if the nolle was invalid, then the court will still retain jurisdiction."

After denying the motion to dismiss, the court relied on the previously accepted plea canvass and proceeded to sentencing. The defendant received a sentence of six months incarceration, execution suspended, eighteen months of probation and 100 hours of community service. The court imposed fines, but remitted them due to "the age of the case." This appeal followed. Additional facts will be set forth as necessary.

I

As an initial matter, we consider the state's claim that the defendant's appeal should be dismissed on the basis of the fugitive felon disentitlement doctrine. This doctrine "allows an appellate court to dismiss the appeal of a party who flees subsequent to the felony conviction from which he appeals." *State* v. *Brabham*, 301 Conn. 376, 378, 21 A.3d 800 (2011). After considering the facts and circumstances of this case, we are not persuaded that the appeal should be dismissed pursuant to this doctrine.

In *Brabham*, our Supreme Court noted that the fugitive felon disentitlement doctrine is a common-law rule that permits, but does not require, the dismissal of appeals by fugitive defendants in certain instances. Id., 379. It further recognized that this doctrine was not a " 'hard and fast rule' " and that there was no universal approach to its application. Id., 380. Three cases decided prior to *Brabham*, in which our Supreme Court applied the doctrine, all involved fugitive defendants whose whereabouts were unknown at the time of the appeal.[8] Id., 381–82. The facts of *Brabham*, however, presented our Supreme Court with the opportunity to consider the scope and operation of the doctrine when the defendant had fled after his conviction, but had been returned to custody by the time of his appeal. Id., 382.

At the outset, the court set forth the various justifications for the doctrine. "The various rationales that have been put forth in support of the fugitive felon disentitlement doctrine include: (1) the judgment on review may be impossible to enforce because the prisoner has escaped, (2) the prisoner's escape disentitles him to

call upon the resources of the [c]ourt for determination of his claims, (3) dismissal will [discourage] the felony of escape and [encourage] voluntary surrenders, and (4) dismissal will [promote] the efficient, dignified operation of the courts. . . . In addition to these reasons, courts, especially when considering appeals by fugitives who have been returned to custody by the time of the appeal, have referred to the need for the dignified and efficient operation of the *appellate process* specifically, rather than of courts as a whole." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 382–83.

The court reasoned that a reviewing appellate court may dismiss an appeal in cases where the defendant had been returned to custody by the time his appeal was heard, "but his flight had undermined the integrity, efficiency or dignity of the appellate process, including the potential remedies in the event of a successful appeal." Id., 385. "Such an approach to the fugitive felon disentitlement doctrine best serves all of the purposes of the doctrine, and allows appellate courts to ensure that a defendant does not reap the benefit of his fugitive status . . . by gaining unfair advantages due to the passage of time at the expense of the integrity of the appellate process." (Citation omitted; internal quotation marks omitted.) Id., 385.

The court set forth a burden shifting analysis in this type of case. Initially, the state "must allege specific instances of prejudice caused by the defendant's flight" when it seeks to have an appeal dismissed pursuant to the fugitive felon disentitlement doctrine. Id., 386. Following these allegations by the state, the "burden of proof shifts to the defendant to show that his flight was not prejudicial to the appellate process. . . . The defendant must disprove the alleged prejudicial effect of his flight by a preponderance of the evidence." (Citation omitted.) Id.[9]

In its brief, the state argues that the analytical framework of *Brabham* applies to the present case and that the appellate process has been prejudiced as a result of the defendant's failure to appear at sentencing. Assuming, without deciding, that *Brabham* applies to the present case,[10] we conclude that the appellate process, specifically, our review of the denial of the defendant's motion to dismiss, has not been prejudiced. Accordingly, we decline to dismiss the appeal on the basis of the fugitive felon disentitlement doctrine.

The state focuses its claim on the rationale for the fugitive felon disentitlement doctrine, that is, the "defendant's actions of failing to appear on the day of sentencing and then absconding from the jurisdiction for twenty years have significantly and negatively impacted the integrity of the appellate process." At the outset, we note that the state's claim that the defendant absconded from the jurisdiction for twenty years is not

supported by the record and amounts to nothing more than sheer speculation, which has no place in appellate review. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009); see also *State* v. *LaFleur*, 307 Conn. 115, 182, 51 A.3d 1048 (2012) (*Palmer, J.*, dissenting). There is no indication that the state actively sought out the defendant following his failure to appear at sentencing. Further, the rearrest order was vacated in 2004.

Turning to the matter of whether the defendant's conduct prejudiced the appellate process, the state alleges that the defendant's case never would have been nolled had he appeared at sentencing. It further contends that there would have been no basis for the motion to dismiss and, therefore, no appeal would have existed but for the actions of the defendant in 1996. This reasoning ignores the conduct of the state during the relevant time period. Specifically, it was the prosecutor that caused the case to be "closed out" pursuant to § 14-140 (b) and the rearrest order vacated in 2004. Additionally, the prosecutor nolled the case on July 25, 2014.

Furthermore, the mere existence of an appeal does not constitute prejudice to the appellate process, or significantly and negatively impact the integrity of that process. Particularly with respect to the issue of whether the court properly denied the motion to dismiss, we are unable to discern any prejudice, due to the passage of time, warranting the dismissal of the appeal pursuant to the fugitive felon disentitlement doctrine. Cognizant that this doctrine is not " 'a hard and fast rule' "; *State* v. *Brabham*, supra, 301 Conn. 380; we conclude that, under these facts and circumstances, dismissal of the defendant's appeal is not warranted under the fugitive felon disentitlement doctrine.

II

We now consider the defendant's claim that the court improperly denied his motion to dismiss. Specifically, he argues that the court lacked jurisdiction over the case after the nolle had been entered and thirteen months thereafter had elapsed.[11] We agree with the defendant.

We begin by setting forth our standard of review. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 12, 160 A.3d 1034 (2017); see also *State* v. *Rivers*, 283 Conn. 713, 723–24, 931 A.2d 185 (2007).

Next, we identify the legal principles regarding a nolle prosequi. "[T]he state's right to terminate a prosecution by the entry of a nolle prosequi has its origins in practices recognized at common law. The effect of a nolle prosequi is to end pending proceedings without an acquittal and without placing the defendant in jeopardy. . . . Although the decision to initiate a nolle prosequi still rests with the state's attorney, the statute and the rules now permit the defendant to object to a nolle prosequi and to demand either a trial or a dismissal except upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or been destroyed and that a further investigation is therefore necessary." (Citations omitted; internal quotation marks omitted.) *State* v. *Lloyd*, 185 Conn. 199, 201–202, 440 A.2d 867 (1981); see also *State* v. *Kallberg*, supra, 326 Conn. 12–14 (distinguishing unilateral entry of nolle proesqui by prosecutor from bilateral agreement involving plea bargain between prosecutor and defendant).

Finally, we review the court's jurisdiction over a criminal case. "The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . The Superior Court's authority over criminal cases is established by the proper presentment of the information . . . which is essential to initiate a criminal proceeding." (Citations omitted; internal quotation marks omitted.) *State* v. *Daly*, 111 Conn. App. 397, 401–402, 960 A.2d 1040 (2008), cert. denied, 292 Conn. 909, 973 A.2d 108 (2009); see also *State* v. *Koslik*, 116 Conn. App. 693, 697, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009). Following a conviction, this jurisdiction ends once the defendant begins serving his sentence. See *State* v. *Smith*, 150 Conn. App. 623, 634, 92 A.3d 975, cert. denied, 314 Conn. 904, 99 A.3d 1169 (2014); *State* v. *Delgado*, 116 Conn. App. 434, 437–38, 975 A.2d 736 (2009).

When the state elects to nolle a charge, however, the termination of the court's jurisdiction necessarily follows a different path. "[T]he entry of a nolle prosequi terminates the prosecution and the defendant shall be released from custody. If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated. Practice Book § 39-31. The defendant is accused of no crime, is released from custody unconditionally and is no longer under the authority of the court. *It follows that, generally, a court does not have jurisdiction over the case after the entry of a nolle.*" (Emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Daly*, supra, 111 Conn. App. 402–403; see also *State* v. *Richardson*, 291 Conn. 426, 430, 969 A.2d 166 (2009). Put another

way, "[a]lthough the entry of a nolle prosequi results in the defendant's release from custody, he can . . . be tried again upon a new information and a new arrest." (Internal quotation marks omitted.) *State* v. *Kallberg*, supra, 326 Conn. 13. Furthermore, thirteen months after the nolle, all pertinent records are erased pursuant to statute. See General Statutes § 54-142a (c) (1); see also *State* v. *Daly*, supra, 402 n.4.

In the present case, the defendant pleaded nolo contendere to the charge of operating a motor vehicle while under the influence of liquor or drugs.[12] He failed to appear for sentencing on January 3, 1996. The court ordered a rearrest, which remained in effect until August, 2004. At that time, the defendant's case was "filed pursuant to § 14-140" and closed out. After approximately ten years, in July, 2014, the state nolled the defendant's case, which the court noted on the record. More than thirteen months later, the state redocketed the case on September 4, 2015. Approximately two months later, the defendant filed his motion to dismiss on the basis that the court lacked jurisdiction following the nolle that had been entered by the state and the passage of thirteen months. Following a hearing on December 3, 2015, the court denied the defendant's motion to dismiss.

Specifically, in denying the motion to dismiss, the court found that, given the facts of this case, the state had mistakenly nolled the case. It further reasoned that the nolle was invalid, and, therefore, the court retained jurisdiction in the defendant's case. The court cited no authority that would support its decision to invalidate a nolle that had been entered more than thirteen months earlier. We are not aware of, and the parties have not directed us to, any statute, rule of practice, or case law that would support the court's decision that a nolle entered in error by the prosecutor after the case had been idle for nearly one decade is invalid. To the contrary, we note that the trial court has observed: "[W]e live in an adversary system and very often for both sides mistakes lead to unintended and final results. The court does feel that the issue of mistake can and should not color any appraisal made of a strictly jurisdictional question." *State* v. *Jesus C.*, Superior Court, judicial district of New Haven, Docket No. CR-295038, (September 18, 1990) (1990 WL 276375, *4). In the present case, the legal consequence of the prosecutor's unilateral action in entering the nolle in 2014—whether intended or unintended—was that the state unconditionally abandoned the prosecution of the defendant. See *State* v. *Kallberg*, supra, 326 Conn. 13 n.7. The court, therefore, lacked jurisdiction following this action by the prosecutor.

In its appellate brief, the state argues that a court retains the inherent authority to correct, sua sponte, a clerical error in the judgment at any time.[13] See, e.g.,

*Sanzo* v. *Sanzo*, 137 Conn. App. 216, 222 n.5, 48 A.3d 689 (2012); *Milazzo* v. *Schwartz*, 88 Conn. App. 592, 597, 871 A.2d 1040 (2005); see also *State* v. *Grant*, 286 Conn. 499, 502 n.1, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. ed. 2d 200 (2008); *State* v. *Wilson*, 199 Conn. 417, 436–37, 513 A.2d 620 (1986). We agree with that statement of the law; we disagree, however, with its application to the present case. The case before us does not constitute a mere clerical error, such as an error in the calculation of damages. See *Milazzo* v. *Schwartz*, supra, 597. Additionally, the error in the present case originated not with the trial court but with the prosecutor's entry of a nolle. As our Supreme Court has explained: "A distinction . . . must be drawn between matters of substance and clerical errors, the distinction being that mere clerical errors may be corrected at any time even after the end of the term. . . . A clerical error does not challenge the court's ability to reach the conclusion that it did reach, but involves the failure to preserve or correctly represent in the record the actual decision of the court. . . . In other words, it is clerical error if the judgment as recorded fails to agree with the judgment in fact rendered . . . ." (Citations omitted; internal quotations omitted.) *Maguire* v. *Maguire*, 222 Conn. 32, 39–40, 608 A.2d 79 (1992); *Bank of Stamford* v. *Schlesinger*, 160 Conn. App. 32, 43, 125 A.3d 209 (2015); see also *Jordan* v. *Jordan*, 125 Conn. App. 207, 211, 6 A.3d 1206 (2010) (General Statutes § 52-212a imposes four month time limit for modification of matters of substance), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011).

The state nolled the case in 2014, and the court noted that disposition. After the passage of thirteen months, the records of the defendant's case were subject to erasure by operation of law. The redocketing and the denial of the motion to dismiss changed the substance of the disposition from a dismissal of the charge to a conviction of operating a motor vehicle while under the influence of liquor or drugs. See *Maguire* v. *Maguire*, supra, 222 Conn. 39. Any error originated with the decision of the prosecutor to nolle the charge and is not a clerical error.[14] We therefore reject the state's argument that the court merely corrected a clerical error when it denied the motion to dismiss on December 3, 2015.

We find support for our conclusion in *Commonwealth* v. *Miranda*, 415 Mass. 1, 610 N.E.2d 964 (1993). In that case, the Commonwealth of Massachusetts nolled one indictment against the defendant, noting that it had been superseded by a second indictment. Id., 4. Approximately three months later, the commonwealth moved to vacate the nolle with respect to the second count of the first indictment, claiming that it had been entered in error. Id. The trial court denied the defendant's attempts to have the first indictment dismissed, concluding that the commonwealth's actions had been

"a mistake, oversight and unintended act." (Internal quotation marks omitted.) Id.

On appeal, the defendant argued that the trial court improperly denied his motion to dismiss and erred by permitting the reinstatement of count two of the first indictment. Id., 5. The commonwealth countered that the trial judge had the authority to vacate the nolle on the basis of a clerical error. Id. The Supreme Judicial Court of Massachusetts agreed with the defendant, concluding that the reinstatement of the first indictment had been improper. Id. The court first noted that, pursuant to Massachusetts law, clerical errors are subject to correction at any time. "Such mistakes, however, do not include or apply to the correction of errors of substance. . . . Material or substantial errors are not ones of transcription, copying, or calculation, but are those that trample the defendant's rightful expectations." (Citations omitted.) Id. It further reasoned that the defendant had a rightful expectation that he would not be charged under the first indictment that had been nolled unless the commonwealth filed a new and proper indictment. Id., 6.

The court's reasoning in *Commonwealth* v. *Miranda*, supra, 415 Mass. 1, applies to the present case. The defendant's case idled for years. The state took steps that led to the rearrest order being vacated and later nolled the charges. Thirteen months passed before the resurrection of the defendant's case. Under the facts and circumstances, we are not persuaded that this is a case of a mere transcription or calculation error. The effect of the state's decision to nolle the case resulted in the termination of the proceedings against the defendant without placing him in jeopardy. To subsequently revive the charge is a matter of substance, and, therefore, the rule regarding clerical errors does not apply to this case.[15]

The judgment is reversed and the case is remanded with direction to grant the motion to dismiss and to render judgment thereon.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant also entered a plea of nolo contendere to part B of the information to the charge of having previously been convicted of a violation of § 14-227a. For the sake of simplicity, all references to the defendant's plea herein include both pleas.

[2] As a result of this conclusion, we need not and do not reach the defendant's second claim pertaining to the propriety of his plea.

[3] General Statutes § 14-140 (b) provides in relevant part: "If any person so arrested or summoned wilfully fails to appear for any scheduled court appearance at the time and place assigned . . . a report of such failure shall be sent to the commissioner [of motor vehicles] by the court having jurisdiction. . . . Any infraction or violations, for which a report for failure to appear has been sent to the commissioner under this subsection, that have not been otherwise disposed of shall be dismissed by operation of law seven years after such report was sent." See *State* v. *Crisanti*, 76 Conn. App. 349, 350, 819 A.2d 299 (2003) (charges of altering motor vehicle identification number were closed out under § 14-140 after defendant failed to appear at scheduled court date).

[4] At a proceeding on July 25, 2014, the court was presented with a docket containing more than 100 matters, including the defendant's case. The state entered a nolle prosequi as to each matter on this docket.

[5] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[6] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial on the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . . (4) Absence of jurisdiction of the court over the defendant or the subject matter . . . ."

[7] In its brief, the state summarized the argument in its opposition that the nolle prosequi was invalid because "(1) the state had no authority to enter it after the guilty plea had been accepted by the court . . . and (2) it had not been entered properly under General Statutes § 14-227a (f) and Practice Book § 39-29 [both of which require the prosecutor to state the reason for the nolle in open court]." (Footnotes omitted.)

[8] The three cases cited in *Brabham* are *Valle* v. *Commissioner of Correction*, 244 Conn. 634, 711 A.2d 722 (1998), *State* v. *Patterson*, 236 Conn. 561, 674 A.2d 416 (1996), and *State* v. *Leslie*, 166 Conn. 393, 349 A.2d 843 (1974). Additionally, this court affirmed the decision of the habeas court, holding that the petitioner had forfeited his appellate right because he had absented himself from his jury trial and sentencing. *Tyler* v. *Bronson*, 12 Conn. App. 621, 621–22, 625–26, 533 A.2d 570 (1987), cert. denied, 207 Conn. 802, 540 A.2d 75 (1988).

[9] In *Brabham*, the defendant set forth a variety of appellate claims, including insufficiency of the evidence to sustain his conviction, an improper jury instruction, the improper denial of his motion for a mistrial and evidentiary errors. *State* v. *Brabham*, supra, 301 Conn. 378. Our Supreme Court concluded the state had alleged, and the defendant had failed to disprove, that the loss of trial exhibits prejudiced the appellate process as to all of these claims. Id., 386–88. As we subsequently discuss, the appellate process has not been prejudiced with respect to the defendant's first appellate claim.

[10] We note that the defendant was not convicted of a felony in the present case. Further, he did not escape from custody of the Department of Correction; see, e.g., *Valle* v. *Commissioner of Correction*, 244 Conn. 634, 635, 711 A.2d 722 (1998) (petitioner failed to return from period of leave to halfway house while in custody of Department of Correction); *State* v. *Leslie*, 166 Conn. 393, 394, 349 A.2d 843 (1974) (defendant escaped from custody of Department of Correction during transport); he failed to appear for sentencing, which constitutes a less serious transaction. Moreover, the record does not indicate that the defendant had been sought out by the authorities in this jurisdiction. See, e.g., *State* v. *Leslie*, supra, 394. Additionally, the trial court vacated the rearrest order in 2004. Despite these issues, we will decide the question of the applicability of the fugitive felon disentitlement doctrine as it has been presented to us by the parties.

[11] General Statutes § 54-142a (c) (1) provides: "Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased, except that in cases of nolles entered in the Superior Court, Court of Common Pleas, Circuit Court, municipal court or by a justice of the peace prior to April 1, 1972, such records shall be deemed erased by operation of law and the clerk or the person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased, provided nothing in this subsection shall prohibit the arrested person or any one of his heirs from filing a petition to the court or to the records center of the Judicial Department, as the case may be, to have such records erased, in which case such records shall be erased."

[12] "A nolo contendere plea has the same effect as a guilty plea, but a nolo contendere plea cannot be used against the defendant as an admission in a subsequent criminal or civil case. . . . Indeed, [i]t is well established that an unconditional nolo contendere plea, when intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars later

challenges to pretrial proceedings." (Citation omitted; internal quotation marks omitted.) *State* v. *Palkimas*, 116 Conn. App. 788, 795, 977 A.2d 705 (2009).

[13] The state also appears to argue that the court properly considered the state's opposition to the motion to dismiss as a request to open and set aside a judgment entered by mistake. "[O]ur courts have inherent power to open, correct and modify judgments, but that authority is restricted by statute and the rules of practice. . . . A motion to open a judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. Section 52-212a provides in relevant part: Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . Practice Book § 17-4 states essentially the same rule. . . . Nevertheless, it is also well settled that [a] judgment rendered may be opened after the four month limitation . . . if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of *mutual mistake*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Gordon* v. *Gordon*, 148 Conn. App. 59, 64, 84 A.3d 923 (2014). This general rule applies to criminal cases as well as civil matters. See *State* v. *Wilson*, 199 Conn. 417, 437, 513 A.2d 620 (1986) ("[w]e see no reason to distinguish between civil and criminal judgments in this respect, and we therefore hold that . . . a criminal judgment may not be modified in matters of substance beyond a period of four months after the judgment has become final").

As correctly noted in the defendant's reply brief, even if the court had treated the state's opposition to the defendant's motion to dismiss as a motion to set aside and open, it was not timely filed within the four month period of § 52-212a and Practice Book § 17-4. Furthermore, the court did not find that there had been a *mutual* mistake, or one that is common to *both* parties. See *Magowan* v. *Magowan*, 73 Conn. App. 733, 739, 812 A.2d 30 (2002), cert. denied, 262 Conn. 934, 815 A.2d 134 (2003). Accordingly, we are not persuaded by this argument.

[14] In its opposition to the motion to dismiss, the state argued that the "Criminal Justice Information System (CJIS) reflects that 'This case was sentenced and disposed of on July 25, 2014' and that the defendant was 'Committed to the Department of Correction and Probation Ordered.' . . . This information is consistent with the fact that the clerk's file reflects that the sentence was imposed on July 25, 2014. At the hearing on the motion to dismiss, the prosecutor stated that, for a period of time, the CJIS erroneously indicated that the defendant had been sentenced and the case disposed as of July 25, 2014. Defense counsel agreed with the prosecutor, and explained that the CJIS had been changed to now show that no judgment had been entered in the defendant's case.

Any confusion or error with respect to the file is not germane to the present case. The defendant's rearrest was vacated and the case was closed out pursuant to § 14-140 (b) in 2004 as a result of the action of the prosecutor. The prosecutor subsequently nolled the case on July 25, 2014. The transcript of that proceeding unquestionably demonstrates that the state nolled all the matters before the court, including the defendant's case. While this may have been done by mistake, any error lies with the prosecutor, and not the court. Any subsequent error in the CJIS does not impact or alter this analysis.

[15] In its brief, the state directs us to *Gholson* v. *State*, 308 S.W.3d 189 (Ark. App. 2009). In that case, the defendant had pleaded guilty to two counts of battery and sentenced to 240 months incarceration and a 120 months suspended sentence. Id., 190. On October 9, 2007, the state moved to revoke the defendant's suspended sentence, alleging that he had violated its terms by committing the act of rape, failing to pay fines, costs and fees, and failing to notify the sheriff of his address and employment status. Id. During the process of scheduling a hearing on the revocation case, an order of nolle proesqui as to the petition to revoke was signed and filed on February 26, 2008. Id. Despite this, a hearing was held on March 6, 2008, and the court determined that the defendant had violated the conditions of his suspended sentence by committing the act of rape. Id.

The defendant then learned of the nolle and moved to set aside the judgment on March 18, 2008. The state responded that the nolle had been entered in error, as it had been mistakenly included in a list of "active stale cases" by the Administrative Office of the Courts. Id. After a hearing, the court set aside the nolle as a scrivener's error and denied the motion to set aside the revocation of the suspended sentence. Id. The Arkansas Court of

Appeals noted that under that state's jurisprudence, authority to set aside the nolle existed. Id. "A circuit court judge may set aside its own order dismissing charges in a criminal case if the original order was entered in error." Id., 190–91. It also relied on Arkansas Rule of Civil Procedure 60, which the Supreme Court of that state had held to apply in criminal cases 'where it recognized a trial court's power to correct a judgment nunc pro tunc to make it speak the truth." Id., 191. Finally, the court noted that the Arkansas Supreme Court had "defined a true clerical error, one that may be correct by nunc pro tunc order, as essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." (Internal quotation marks omitted.) Id.

We conclude that *Gholson* provides limited guidance as a result of the differences between our law and that of Arkansas. It appears that Arkansas takes a broader view of clerical errors, while we are bound, of course, by the limits delineated by our Supreme Court. *State* v. *Holley*, 174 Conn. App. 488, 495,     A.3d     (2017). Moreover, in *Gholson*, the actions of the Administrative Office of the Courts contributed to the error, where, in the present case, it was solely the acts of the prosecutor that resulted in the nolle of the defendant's case. Therefore, we are not persuaded by the state's reliance on *Gholson*.