## COMMONWEALTH *vs.* HENRY WEYMOUTH.

A judge of the superior court has power to revise and increase a sentence imposed upon a convict, during the same term of court, and before the original sentence has gone into operation, or any action has been had upon it.

HABEAS CORPUS. It appeared by the record that the prisoner, after a plea of guilty to an indictment for larceny in a building, was sentenced in the superior court on the 18th of February 1861, by *Putnam*, J., to be punished by confinement in the house of correction for two years; and, on the same day, after the issue of the warrant by virtue of which he was ordered to be committed to the house of correction, but before the service or execution thereof, upon motion of the attorney for the Commonwealth, the court ordered that the execution of the warrant be stayed until a further hearing. On the next day the prisoner was set to the bar, and the attorney for the Commonwealth moved for a revision of the sentence passed upon him; and the prisoner protested against the same. And the court, after hearing testimony concerning the prisoner's character, and further evidence concerning the circumstances of the case, ordered that the previous sentence passed upon him be revised, and that he be punished by confinement in the state prison for three and a half years, the first two days of which were to be solitary.

*C. H. Hudson & B. F. Russell*, for the prisoner.

*Foster*, A. G., for the Commonwealth.

BIGELOW, C. J. We are not called upon, in the present case, to express any opinion concerning the wisdom or expediency of the course adopted by the court below, in revising and changing a sentence which had been formally promulgated and pronounced on a convict. The presumption is that there were sufficient reasons, addressing themselves to the sound judicial discretion of the court, for such action, and that it was deemed to be necessary in furtherance of justice and the due administration of the law. The single question which we have to determine is, whether, upon the record as certified to us, there is any

such irregularity or illegality as to entitle the petitioner to be discharged from the imprisonment to which he is now subjected, under and by virtue of the judgment and sentence of that court.

It seems to have been recognized as one of the earliest doctrines of the common law, that the record of a court may be changed or amended at any time during the same term of the court in which a judgment is rendered. It is said by Lord Coke, in Co. Litt. 260 a: " Yet during the term wherein any judicial act is done, the record remaineth in the breast of the judges of the court, and in their remembrance, and therefore the roll is alterable during that term, as the judges shall direct; but when that term is past, then the record is in the roll, and admitteth of no alteration, averment or proof to the contrary." This statement of the rule of law is substantially followed by subsequent text writers of high authority. Com. Dig. Record, F. Bac. Ab. Sessions of Justices. 2 Gabbett's Crim. Law, 564. In 1 Chit. Crim. Law, 722, it is stated thus: " In case of misdemeanors, it is clear the court may vacate the judgment before it becomes matter of record, and may mitigate, or pass another, even where the latter is more severe; and the justices at sessions have the same power during the session, because it is regarded as only one day." That this power has been often exercised by the courts in England, is manifest from cases in which it appears that judgments and sentences, during the same term in which they have been entered, have been vacated, and others substituted, without doubt or question. *Regina* v. *Fitzgerald*, 1 Salk. 401. *Turner* v. *Barnaby*, 2 Ib. 567. *The King* v. *Price*, 6 East, 327. *The King* v. *Justices of Leicestershire*, 1 M. & S. 444. *Darling* v. *Gurney*, 2 Dowl. Pr. Cas. 101. The authority thus exercised is probably founded on the practice by which the record is not finally made up until the end of the term or session of the court, when " the roll," as it is called, is signed and returned. Until then, it remains in the control of the court, and no entry therein is deemed to be final, or beyond the power of the court to amend or alter it, either for error or other sufficient cause. The practice in this

commonwealth has been substantially in accordance with the rule of the common law, as stated in the authorities above cited. It has been varied only so far as to adapt it to the different forms and modes of doing business in our courts. During the term, no record, in the strict meaning of that word, is kept of the doings of the court. Its proceedings are noted by the clerk from day to day in brief minutes upon the docket, and from these the extended record is drawn up after the final adjournment for the term. The memoranda thus made have always been subject to such alterations during the term as might be deemed by the court necessary or proper, either by correcting mistakes or by substituting a different entry or judgment from that originally made. Nor is this the extent of the power of the court over its records. Upon due proof that some error has been made in drawing up the record, amendments have been allowed after the final entry of judgment and the adjournment of the court for the term. *Tilden* v. *Johnson*, 6 Cush. 354 *Balch* v. *Shaw*, 7 Cush. 282. *Fay* v. *Wenzell*, 8 Cush. 315. In *Stickney* v. *Davis*, 17 Pick. 169, this court allowed a judgment to be vacated after the expiration of a year from its rendition, and a new one to be substituted. The power of the court to allow such amendments, and the due and proper limitation on its exercise, are there stated and accurately defined. The rule is declared to be that, if it clearly appears that no action has been had on the judgment, or the execution, if one has been issued, has been returned to the files unexecuted, and where the rights of third persons, not parties to the suit, cannot be affected, there is no good reason for refusing to vacate a judg-ment for sufficient cause, and substituting a new one in its place. This is certainly a safe and reasonable exercise of judi cial discretion, which cannot be used to abridge or infringe upon the rights of any one ; not on those of the parties to the suit, if a legal and regular judgment only is rendered ; nor of third persons, because it cannot be exercised if it operates to their prejudice or injury. The application of this doctrine to the present case is decisive against the claim of the petitioner to his discharge. It is not contended that the court has any

less power or control over its records in a criminal case than in one which affects the parties *civiliter* only. Certainly there is no ground for any such distinction. The true test by which to determine whether the power can be executed is, to ascertain whether it will affect the legal rights of the parties. If it will not, then it is a legitimate exercise of judicial discretion, of which no one has a right to complain. The petitioner in the present case is not subjected by the amended sentence of the court to any punishment for his offence other or greater than that allowed by law. He was never taken or charged on the warrant which was issued on the sentence as originally pronounced. That sentence never went into operation, and, in effect, was the same as if it had never been passed. So long as it remained unexecuted, it was, in contemplation of law, in the breast of the court, and subject to revision and alteration. He was not injured or put in jeopardy by it any further than he would have been by a conclusion or judgment of the court as to the extent of his punishment, which had not been announced. Until something was done to carry the sentence into execution, by subjecting the prisoner to the warrant in the hands of the officer, no right or privilege to which he was entitled was taken away or invaded, by revoking the sentence first pronounced, and substituting in its stead the one under which he now stands charged. If it had appeared that the petitioner had actually been taken and committed under the first sentence, or if he had been thereby condemned to imprisonment in the state prison, so that the term of his sentence would be computed from the time he was first ordered to remain in the custody of the sheriff, according to *St.* 1859, *c.* 248, we might have arrived at a different result; but on the record as it stands, we are all of opinion that the order must be, *Prisoner remanded.*