******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom, PALMER and McDONALD, Js., join, concurring in part and dissenting in part. A jury found the defendant, Kenneth Lee McCoy, guilty of murder. The defendant filed a motion for a new trial within the time prescribed by Practice Book § 42-54, raising grounds that the trial court described as "colorable . . . ." The court scheduled its consideration of the motion for the same day as the defendant's sentencing. Upon beginning to hear argument on the motion, however, the court determined that a trial transcript was necessary and, therefore, continued the hearing on the motion to allow for the transcript's preparation and for the state to file a brief. Both parties consented.

However, to avoid inconveniencing the victim's family, which was in court that day, the trial court conducted the defendant's sentencing proceeding. This, in the words of the Appellate Court, was a "collective mistake"; *State* v. *McCoy*, 171 Conn. App. 311, 328 n.6, 157 A.3d 97 (2017); because it implicated the rule that "the trial court loses jurisdiction upon sentencing . . . ." (Citations omitted.) Id., 327. The import of this rule was not raised until the state, with a further extension of time, filed its brief opposing the defendant's motion for a new trial. Upon discovering this collective mistake, the trial court agreed with the state that it lacked jurisdiction to rule on the motion and denied it.

Like the Appellate Court, the majority today concludes that nothing can be done about what it concedes was an "unintentional" or "inadvertent" loss of jurisdiction over a timely filed motion for a new trial. I find the court's application of this rule in the present case to prevent a ruling on the defendant's motion so illogical that I cannot believe our law compels this result. In fact, it does not. Rather, there are in my view exceptions to this rule that permitted—in fact, required—the trial court to retain jurisdiction over the defendant's motion for a new trial, which was timely filed prior to sentencing. These exceptions fall within the scope of our existing case law. To the extent that they do not, I believe that under this court's inherent authority to develop the common law, this court should adopt a sensible exception to avoid such an illogical result. Finally, even in the absence of any exception, I would conclude that it was plain error for the trial court not to have ruled on the motion for a new trial before sentencing, and I would reverse the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court with direction to rule on that motion—a simple solution that I cannot fathom our law does not permit. I therefore respectfully dissent.[1]

I

This court has articulated the rule at issue in the present case in this way: "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed . . . [but] the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence." (Citations omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431–32, 646 A.2d 85 (1994). The parties and the majority take it as a given that this rule, which the trial court concluded prevented it from ruling on the defendant's timely filed motion for a new trial, implicates the trial court's *subject matter* jurisdiction. Although our case law is not clear that this rule implicates subject matter jurisdiction, for purposes of this discussion I will not quarrel with that proposition.[2]

Most of our case law concerning the subject matter jurisdiction of the courts concerns the interpretation of statutes, i.e., whether the legislature has conferred jurisdiction on the courts or limited the jurisdiction of the courts. When a statute seeks to create or expand the court's jurisdiction, we narrowly construe the statute. See *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003) (statute that creates cause of action that was not available at common law is strictly construed); *H-K Properties*, *LLC* v. *Planning & Zoning Commission*, 165 Conn. App. 488, 500, 139 A.3d 787 ("to substantially expand appellate jurisdiction, we must construe the statute strictly in accordance with its terms"), cert. granted on other grounds, 322 Conn. 902, 138 A.3d 932 (2016) (appeal withdrawn August 5, 2016). When a statute seeks to limit the court's common-law jurisdiction, however, we strictly construe that statute as well so as to limit jurisdiction only to the extent expressly and explicitly stated by the legislature. See *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 324–25, 968 A.2d 396 (2009) (explaining that legislature knows how to expressly limit scope of jurisdiction and if no intent to limit is expressed, then statute does not divest court of jurisdiction). This latter rule of construction is consistent with the general rule that the court's common-law general jurisdiction is broad and that "there is a strong presumption in favor of jurisdiction . . . ." (Citations omitted.) *State* v. *Ramos*, 306 Conn. 125, 134–35, 49 A.3d 197 (2012). If we interpret a court's statutory jurisdiction too broadly or too narrowly, the legislature can direct the judiciary differently. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 297, 695 A.2d 1051 (1997) ("the legislature [may instruct] us that we have misconstrued its intentions" [internal quotation marks omitted]).

The rule under consideration in the present case, however, does not implicate the legislative creation, exclusion, or limitation of the court's jurisdiction—sub-

ject matter or otherwise. Rather, as the majority acknowledges, we grapple with a principle of *common-law* jurisdiction, and specifically, a rule concerning when a court *loses* common-law jurisdiction it indisputably had—here, the jurisdiction to rule on a timely filed posttrial motion for a new trial, a motion which derives from the common law. See *Zaleski* v. *Clark*, 45 Conn. 397, 404 (1877). In a situation such as this, it is the *courts* that define the contours of their common-law jurisdiction over a common-law motion, not the legislature. See *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010) ("The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." [Internal quotation marks omitted.]). Therefore, the contours of this jurisdictional rule are defined by the decisions of this court, based on experience and sensibility, rather than by a mechanical application of rules without reason. See O. Holmes, The Common Law (P. Pereira & D. Beltran eds., 2011) p. 5 ("The life of the law has not been logic: it has been experience. . . . The law . . . cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics.").[3]

As is obvious from our most recent case law, this court has struggled with defining the sensible contours of this common-law jurisdictional rule. Any rule, however, must account generally for the "strong presumption in favor of jurisdiction"; *State* v. *Ramos*, supra, 306 Conn. 133–35;[4] and specifically for the courts' broad common-law jurisdiction to preside over criminal cases. *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992) ("[t]he Superior Court hearing a criminal matter acquires subject matter jurisdiction from its authority as a constitutional court of unlimited jurisdiction" [internal quotation marks omitted]). Also as a general principle, the court has the inherent authority to modify its own judgments. See *State* v. *Dayton*, 176 Conn. App. 858, 871 n.13, 171 A.3d 482 (2017) ("[o]ur courts have inherent power to open, correct and modify judgments" [internal quotation marks omitted]). Historically, this includes the authority to grant a motion for a new trial, which is a "common law power [that] the courts . . . have the right to exercise in such a manner as shall best promote justice." *Zaleski* v. *Clark*, supra, 45 Conn. 404.

In *State* v. *Wilson*, 199 Conn. 417, 436–38, 513 A.2d 620 (1986), this court ruled that the trial court was without jurisdiction to modify or correct a judgment, in other than clerical respects, three years after the defendant's sentence. In determining the outside limits of the timing by which a trial court could modify a judgment, we recognized that "[n]either our General Statutes nor our Practice Book rules define the period during which a trial court may modify or correct its judgment in a criminal case. On the civil side, however, Practice Book § [17-4] provides that any civil judgment

or decree may be opened or set aside 'within four months succeeding the date on which [notice] was [sent].' " (Emphasis omitted.) Id., 437. We therefore borrowed this four month rule and extended it to judgments in criminal cases, explaining that there was "no reason to distinguish between civil and criminal judgments in this respect, and we therefore hold that, for purposes of the common law rule, a criminal judgment may not be modified in matters of substance beyond a period of four months after the judgment has become final." Id. We concluded, however, in *Wilson*, that even with an extension of the four month rule, the trial court clearly had exceeded its jurisdiction by attempting to amend the judgment three years after sentencing. Id.

Subsequently, in *State* v. *Luzietti*, supra, 230 Conn. 427, without overruling or even discussing *Wilson*, this court held that in criminal cases, "once judgment has been rendered and the defendant has begun serving the sentence imposed, the trial court lacks jurisdiction to modify its judgment in the absence of a legislative or constitutional grant of continuing jurisdiction." Id., 431. In *Luzietti*, the defendant's sentence had been stayed pending the disposition of his motion for a judgment of acquittal. Id., 429. The trial court denied the motion and the defendant began serving his sentence. Id. Six weeks after he had begun serving his sentence, the defendant filed a motion to reargue the motion for a judgment of acquittal, which the trial court granted and then held a hearing. Id., 429–30. At the hearing, the state argued that the trial court could not grant the motion for a judgment of acquittal because it did not have jurisdiction to vacate the judgment of conviction after the defendant began serving his sentence. Id., 430. The trial court disagreed and granted the motion. Id. The state appealed to the Appellate Court, which held that the trial court lacked jurisdiction to grant the defendant's motion for a judgment of acquittal because it could not modify the judgment after the defendant had begun serving his sentence. Id. In affirming the judgment of the Appellate Court, this court relied on the rule that "the [trial] court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence," absent a statutory or constitutional grant of jurisdiction. Id., 432.

Then, in *State* v. *Myers*, 242 Conn. 125, 698 A.2d 823 (1997), without even mentioning the common-law rule at issue, this court held that the trial court retained jurisdiction to rule on a motion for a new trial filed before sentencing but considered and ruled on after sentencing. Id., 136. In *Myers*, prior to sentencing, the defendant had filed a motion for a new trial on the ground of juror bias. Id., 129. Before ruling on the motion, the trial court sentenced the defendant without staying the sentence. Id., 131. Approximately five months later, the trial court granted the motion for a

new trial; id.; but later vacated its order, determining that it could not rule on the motion after the defendant had been sentenced and that the juror bias claim should have been raised in a petition for a new trial, not in a motion for a new trial. Id., 136. Citing to *Wilson*, but without more, this court reversed the judgment of the trial court, explaining that "the trial court retained jurisdiction to entertain the motion for a new trial after sentencing because it could have opened the judgment." (Footnote omitted.) Id.

Consistent with our existing case law, there are in my view at least two paths to concluding that the trial court in the present case did not lack jurisdiction over the defendant's timely filed motion for a new trial: (1) because our holdings in *Wilson* and *Myers* permit the trial court to hear and rule on a timely new trial motion filed before sentencing or (2) because the exception for mutual mistake applicable in civil cases should apply in this case.[5] At any rate, I have heard no compelling argument that should prevent this court from developing or modifying this common-law rule, which we have the inherent power to do, to recognize an exception to the general axiom for timely motions for a new trial filed before sentencing.

A

There is no dispute that the trial court in the present case originally had jurisdiction to decide the motion for a new trial: "The Superior Court hearing a criminal matter acquires subject matter jurisdiction from its authority as a constitutional court of unlimited jurisdiction. . . . The Superior Court's authority in a criminal case becomes established by the proper presentment of the information . . . which is essential to initiate a criminal proceeding. . . . [U]pon the return to the Superior Court of the indictment [or information] against the accused, it obtained the sole and original jurisdiction of the charge therein made . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Carey*, supra, 222 Conn. 305–306; see *State* v. *Ramos*, supra, 306 Conn. 133–34 ("'The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law.'"). Thus, this case does not in my view require us to *expand* the court's jurisdiction, as the majority suggests. Rather, the question is whether the court inalterably *lost* jurisdiction it unquestionably had, preventing it from ruling on the timely filed motion.

The rule at issue is the product of common law; it is a common-law exception to the court's inherent authority to open, correct, and modify judgments. See *State* v. *Dayton*, supra, 176 Conn. App. 871 n.13 ("[o]ur courts have inherent power to open, correct and modify judgments" [internal quotation marks omitted]). The common law is judge made law. See *Western Union*

*Telegraph Co.* v. *Call Publishing Co.*, 181 U.S. 92, 102, 21 S. Ct. 561, 45 L. Ed. 765 (1901) ("the common law comprises the body of those principles and rules of action . . . which derive their authority . . . from the judgments and decrees of the courts" [internal quotation marks omitted]). As such, this court has the inherent authority to develop and adapt it to the circumstances at issue. *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 436, 54 A.3d 1005 (2012) (acknowledging that this court has "authority to adapt the common law to the changing needs of society," although not in sovereign immunity cases).[6] Accordingly, because the rule at issue is a common-law rule, this court has the authority to clarify, develop, and adapt the rule, including limiting its scope and applicability through exceptions.

As discussed, our cases have recognized an exception to the common-law rule that a trial court loses jurisdiction upon sentencing, and have done so in situations that are logical and sensible. See *State* v. *Wilson*, supra, 199 Conn. 437; see also *State* v. *Myers*, supra, 242 Conn. 136. In my view, it requires no extension of our existing case law to hold that such an appropriate and sensible exception to the common-law rule applies in this case. I would not hold that we have overruled those cases sub silentio, or that we should overrule them explicitly now. Rather, the case that the majority holds governs the present situation, *Luzietti*, I find plainly distinguishable.

This court exercised its common-law authority in *Wilson*, holding that the four month rule applicable in civil cases applied equally in criminal cases. In doing so, we created an exception to the general common-law rule that courts lose jurisdiction upon sentencing. See *State* v. *Wilson*, supra, 199 Conn. 437. Under this exception, the trial court in the present case had jurisdiction to rule on the timely filed motion for a new trial, despite the defendant's having begun serving his sentence, because the motion was filed and, even with an extension of time for briefing, was to have been ruled on within four months of the sentencing.[7] Clearly, if a court retains jurisdiction to modify a sentence for up until four months after the judgment, a timely motion for a new trial filed prior to sentencing falls within this four month time frame. Accordingly, under the four month rule espoused in *Wilson*, even after sentencing, the trial court retained jurisdiction to rule on the timely filed motion for a new trial because the motion's filing and the court's ruling both occurred before four months had passed after sentencing.

Then, in *Myers*, this court stated that "the trial court retained jurisdiction to entertain the motion for a new trial [that was timely filed prior to sentencing but not decided until] after sentencing because it could have opened the judgment." (Footnote omitted.) *State* v.

*Myers*, supra, 242 Conn. 136. In *Myers*, we cited to *Wilson* and acknowledged, in a footnote, that the four month rule applied equally in criminal and civil cases. See id., 136 n.16. Thus, as a result of the timely filing of the motion prior to sentencing, the four month rule applied to the defendant's motion in *Myers*. The trial court, in *Myers*, however, did not rule on the motion for a new trial within four months of sentencing the defendant. This possibly suggests that *Myers* not only applied the four month rule, but determined that the trial court retains jurisdiction over a motion for a new trial as long as it was timely filed prior to sentencing, even if the court did not rule on the motion within the four month time frame.[8] To the extent that the court in *Myers* misapplied the four month rule in this regard, such an error does not affect the applicability of the four month rule to the present case, in which the trial court did rule on the motion within four months of sentencing. See footnote 7 of this concurring and dissenting opinion. In all other aspects, the procedural posture of the present case is nearly identical to that of *Myers*: a motion for a new trial filed before sentencing and within the time permitted to file such a motion.[9] Accordingly, pursuant to *Myers*, the trial court in the present case retained jurisdiction to decide the defendant's motion for a new trial.

The majority counters that the four month rule does not apply, in essence holding that *Luzietti* and subsequent cases overruled *Wilson* and *Myers* sub silentio. In *State* v. *Luzietti*, supra, 230 Conn. 427, which ignores the four month rule, the defendant timely filed his motion for a judgment of acquittal, and the trial court denied it prior to sentencing. Id., 429. Six weeks after sentencing, the defendant filed a motion for reargument. Id. The trial court granted reargument but denied relief, holding that it could not grant the underlying motion for a judgment of acquittal because it did not have jurisdiction to modify the judgment. Id., 429–30. In *Luzietti*, however, this court was not faced with determining whether the trial court retained jurisdiction to decide a timely filed motion for a new trial that was filed *prior* to sentencing, but rather was faced with a motion for reargument filed *after* sentencing regarding a motion for a judgment of acquittal that already had been denied prior to sentencing.

Similarly, all the other post-*Myers* cases that the majority relies on to reject the four month rule are distinguishable because they involve motions or petitions filed *after* sentencing. See *State* v. *Ramos*, supra, 306 Conn. 128–29 (motion to vacate filed more than three years after judgment); *State* v. *Parker*, supra, 295 Conn. 830 (motion to correct illegal sentence filed after sentencing); *State* v. *Das*, 291 Conn. 356, 360, 968 A.2d 367 (2009) (motion to vacate judgment filed after sentencing); *State* v. *Lawrence*, 281 Conn. 147, 151, 913 A.2d 428 (2007) (motion to correct illegal sentence filed

after sentencing); *State* v. *Reid*, 277 Conn. 764, 771, 894 A.2d 963 (2006) (motion to withdraw guilty plea filed after sentencing); *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 35, 779 A.2d 80 (2001) (petition for writ of habeas corpus seeking to correct illegal sentence filed after sentencing). Thus, even if the majority is correct that *Luzietti* and its progeny overrule *Wilson* sub silentio, making the four month rule inapplicable in criminal cases in which a motion is filed *after* sentencing, *Luzietti* does not affect the holding of *Myers*, which permits a court to retain jurisdiction overly a timely filed motion for a new trial filed *prior* to sentencing. I see no reason why this court's decision in *Luzietti* would or should have any effect on our decision in *Myers*.

B

In the civil context, a circumstance such as the present one—the "unintentional" loss of jurisdiction over a timely filed motion—would very likely be called a "mutual mistake," authorizing the court to open its judgment to rule on the motion. See *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980); *Carabetta* v. *Carabetta*, 133 Conn. App. 732, 735, 38 A.3d 163 (2012). A mutual mistake is a mistake "that is common to both parties and effects a result that neither intended." (Internal quotation marks omitted.) *Terry* v. *Terry*, 102 Conn. App. 215, 229, 925 A.2d 375, cert. denied, 284 Conn. 911, 934 A.2d 931 (2007). In the present case, as the Appellate Court accurately described it, the parties and the trial court made the "collective mistake" of believing that the court would retain jurisdiction over the new trial motion once the defendant had been sentenced. *State* v. *McCoy*, supra, 171 Conn. App. 328 n.6. In my view, even if the majority is correct that *Luzietti* has thrown cold water on *Wilson* and *Myers*, the trial court could have opened the judgment to rule on the new trial motion under the related concept of mutual mistake.

In civil cases, General Statutes § 52-212a permits parties to file a motion to open or set aside the judgment within four months from the date of judgment. There is an exception, however, for cases in which the judgment was based on fraud or mutual mistake: "It is a well-established general rule that even a judgment rendered by the court . . . can subsequently be opened [after the four month limitation] . . . if it is shown that . . . the judgment, was obtained by fraud . . . or because of mutual mistake." (Internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 238, 764 A.2d 739 (2001). This authority stems from the courts' "intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mistake." *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992); see also *In re Samantha S.*, 120 Conn. App. 755, 758

n.3, 994 A.2d 259 (2010) ("[a] common-law motion to open must be predicated on fraud, duress or mutual mistake"), appeal dismissed, 300 Conn. 586, 15 A.3d 1062 (2011).

"Mutual mistake is an equitable principle that allows for the court to work fairness, equity and justice." (Internal quotation marks omitted.) *In re Santiago G.*, 154 Conn. App. 835, 841 n.6, 108 A.3d 1184, aff'd, 318 Conn. 449, 121 A.3d 708 (2015). Fairness, equity and justice are essential to the justice system as a whole, not just to the civil side of that system. Although this court never has applied the mutual mistake exception in a criminal case, I can think of no policy reason that justifies remedying mutual mistakes in civil cases but not in criminal cases, especially in light of the greater liberty interests at stake in criminal cases. The Appellate Court, in fact, has noted that the exception should apply equally in criminal cases. In *State* v. *Dayton*, supra, 176 Conn. App. 871 n.13, that court explained that in civil cases, there is an exception to the four month rule if the judgment was obtained by fraud or mutual mistake. Citing to *Wilson*, the Appellate Court acknowledged that there was no reason for either the four month rule or the mutual mistake exception not to apply equally to criminal cases. Id.[10]

This court can, and in my view should, exercise its inherent authority to develop and adapt the common-law rule at issue by extending the mutual mistake exception to criminal cases. See part I A of this concurring and dissenting opinion. In exceptional circumstances, as in the present case, where both parties and the court did not realize that application of the rule at issue would deprive the court of jurisdiction, such a mutual mistake should not divest the court of jurisdiction to decide a timely filed motion for a new trial. See *State* v. *Brown*, 8 Conn. App. 248, 251, 512 A.2d 965 (1986) ("'[W]hen a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired. It does not lose jurisdiction because it makes a mistake in determining either the facts or the law, or both, in the case before it,'" quoting 22 C.J.S. 423–24, Criminal Law § 165 [1961].). Such an application of the rule is unfair, inequitable and unjust, and I would therefore conclude that the court could have exercised jurisdiction to rule on the motion for a new trial in this case because of mutual mistake.

C

Even if, as the majority suggests, neither of these exceptions apply and our current case law does not permit a trial court after sentencing to rule on a timely filed motion for a new trial, I believe we can and should recognize such a sensible exception to what Holmes would refer to as the "axioms and corollaries [akin to] a book of mathematics." O. Holmes, supra, p. 5. As discussed previously, the rule at issue is a common-

law rule. As a common-law rule borne out of experience and sensibility; see id.; this court has the inherent power to define its contours to ensure that its application does not lead to unsensible and unjust results, inherent power that includes the ability to limit its scope and applicability through exceptions to it, such as for timely filed motions for a new trial.

Ultimately, it is a question of judicial policy for this court to determine whether our common-law rule should prevent a timely filed motion for a new trial from being adjudicated when the trial court and the parties mistakenly believed that the court could rule on the motion after sentencing. See *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 25–26, 441 A.2d 49 (1981) (defining common law as "the prevailing sense of the more enlightened members of a particular community, expressed through the instrumentality of the courts . . . in view of the particular circumstances of the time" [internal quotation marks omitted]). I would hold that our law should permit a trial court under these circumstances to exercise jurisdiction to rule on the timely filed motion for a new trial. If the trial court denies the motion, the court's judgment and sentence remain the same. If the trial court were to find the motion to have merit, I believe our law should permit the court to "open, correct and modify" its judgment by vacating the sentence and ordering a new trial, just as our court could order if, on appeal, we were to find error. Such an exception would be consistent with this court's holding in *Myers*, to the extent that *Myers* does not rely on the four month rule. It may be unclear from *Myers* whether the court relied solely on the four month rule in holding that the trial court retained jurisdiction over a motion for a new trial that was timely filed prior to sentencing, but not ruled on until after sentencing. See *State* v. *Myers*, supra, 242 Conn. 136. What is clear from *Myers*, however, is that this court held that there was an exception to the common-law rule at issue under such circumstances. Just as in *Myers*, the trial court in the present case originally had jurisdiction over a timely filed motion for a new trial, and the issue is whether the court then accidentally lost jurisdiction. As a matter of law, *Myers* clarified that the common-law rule does not deprive the court of jurisdiction in these circumstances. As a matter of judicial policy, such an exception is necessary to protect a defendant's ability to seek review of his new trial claims from the court that presided over the trial and had the opportunity to view the effect of any alleged improprieties.

The state argues that an unflinching application of the general rule is necessary to ensure eventual finality and to prevent trial judges from dawdling over motions for too long. Both policies are laudable, but, in my view, neither suffices to justify strict adherence to a supposed general rule at such a cost to defendants.[11]

First, as the state admitted candidly in argument before this court, finality is not achieved in this case: it is an illusion. Namely, the issues raised in the timely motion that the trial court accidentally lost jurisdiction over can and will be raised in postjudgment petitions for a new trial or habeas corpus or a motion to correct an illegal sentence. See *State* v. *Parker*, supra, 295 Conn. 837, 839 ("permitting correction of both illegal sentences and sentences imposed in an illegal manner" and noting that "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process" [internal quotation marks omitted]). The state goes on to argue that while that might be true, there is virtue in moving the case along to the inevitable next step.

Although I cannot disagree with—and perhaps join the state in—the cynical view on which this argument is based (i.e., there will always be a postjudgment challenge), to me, this inevitability should not contribute to the misapplication of a rule to a situation to which it should not apply. Moreover, although this defendant or any other might very well be able to add his new trial claims to any other collateral challenge he brings, as the state well knows, the obstacles to relief for a convicted criminal defendant increase as the burdens of proof heighten in collateral proceedings.[12] Would it not have been better for everyone if we had the considered views of the trial judge on these issues (issues the trial judge called "colorable"), whether on direct appeal or on collateral review? In fact, we must defer to the judge who sat through the trial and witnessed the impact on the jury of the prosecutor's actions and the court's rulings. See *State* v. *Smith*, 313 Conn. 325, 347, 96 A.3d 1238 (2014) ("the trial [judge has a] superior opportunity to assess the proceedings over which he or she has personally presided" [internal quotation marks omitted]). Ruling on the issue through a timely filed motion for a new trial, reviewed on direct appeal with deference, very likely removes the issue from among any the defendant might seek to raise in a collateral proceeding.

Additionally, this court previously has rejected arguments that the need for "finality" justifies upholding a judgment obtained through mutual mistake or fraud. In *In re Baby Girl B.*, supra, 224 Conn. 265–66, the commissioner of the Department of Children and Youth Services (commissioner) filed a petition for termination of parental rights on the ground of abandonment pursuant to General Statutes (Rev. to 1991) § 17a-112 (b) (1). Four months after the petition was granted, the respondent mother moved to open the judgment pursuant to § 52-212a. Id., 266. The trial court granted the motion to open and denied the petition for termination of parental rights. Id., 266–67. On appeal, the commis-

sioner argued that the trial court improperly granted the motion to open because § 52-212a did not apply to petitions for termination of parental rights and because there was a public policy in favor of finality in cases involving juveniles. Id., 281–82.

This court in *In re Baby Girl B.* rejected the commissioner's position, not only because it was in conflict with the plain language of § 52-212a; id., 282; but also because the commissioner's argument for finality conflicted with the court's statutory *and* "intrinsic powers" to open judgments. Id., 283. Although the court in *In re Baby Girl B.*, was required to interpret § 52-212a, the court's analysis established that a public policy in favor of finality does not necessarily trump the court's inherent authority to open judgments.

Finally, even as the majority applies the jurisdictional rule with exactitude, it tempers the rule with an obvious work-around: the trial court can simply sentence the defendant and stay the sentence until the court gets around to ruling on the motion. See *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988). In my view this is no rule at all. Although I agree with the majority that staying the proceedings is a "useful mechanism,"[13] it surely does not vindicate the policies the state offers in support of the rule. This work-around undercuts not only the finality of the judgment, but also the other policy justification the state offers for the draconian rule the majority adheres to, i.e., that trial judges will take too long to rule on such motions. I am not aware that this is a prevalent problem. If it is, perhaps it is an issue the Rules Committee of the Superior Court can address. But the sanction of the court losing jurisdiction over a timely motion for a new trial that it characterized as "colorable" seems to me to be a solution far out of proportion to a potential problem that is so easily overcome by other means. Better in my view to recognize an exception to the rule than to pay lip service to a rule so easily avoided, especially when an exception would be an equally useful mechanism.[14]

As a result, I find neither of the state's policy justifications persuasive. Rather, on the basis of judicial experience and sensibility; see O. Holmes, supra, p. 5; I believe judicial policy, consistent with this court's holding in *Myers*, favors recognizing an exception under the circumstances at issue in this case. As a result of either accident or the parties' mutual oversight of controlling law, a defendant should not be deprived of his opportunity to have his properly filed common-law motion for a new trial decided by the judge who oversaw his criminal trial, and personally observed the jury and its reaction to evidence and arguments.

## II

Even if I were to accept the majority's conclusion that there is no exception under the common law that

would permit the trial court to rule on a timely filed motion for a new trial after the defendant had been sentenced, I have no trouble calling the trial court's "unintentional" loss of jurisdiction what it clearly was: plain error. As two erudite commentators have advised: "Plain error is most likely found where the trial court and the parties have overlooked clearly controlling law, be it a constitution, statute, rule, case law or 'established practice.' " C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.7, p. 304. This seems to me to be a textbook—perhaps hornbook— example of plain error: the trial court and the parties overlooked controlling case law when the court, with the parties' agreement, continued the new trial motion and went on to sentence the defendant. More specifically, if both the state and the Appellate Court are correct that the "traditional rule" applies in the present case, ending the trial court's jurisdiction when the sentence was pronounced and executed, with no exception for a timely filed motion for a new trial or the parties' and the court's mutual mistake, in my view it was plain error for the trial court to so pronounce and execute sentence, leaving a properly filed motion to be lost in the oblivion. At the very least, the court should have stayed the defendant's sentence while it considered the motion, as the majority suggests trial courts do routinely.

I fully recognize that "[t]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812–13, 155 A.3d 209 (2017).

In my view, the trial court's failure to rule on a timely filed motion for a new trial—perhaps in any case, but surely in a case in which the court has effectively pronounced a life sentence on the defendant—clearly "affects the fairness and integrity of and public confidence in the judicial proceedings."[15] (Internal quotation marks omitted.) Id., 812. Judges have an obligation to rule on motions, certainly timely filed motions that raise "colorable" issues. See *Amato* v. *Erskine*, 100 Conn.

497, 499, 123 A. 836 (1924) ("[it is the court's] right and duty to determine every question which may arise in the cause" [internal quotation marks omitted]); Code of Judicial Conduct, Rule 2.7 ("[a] judge shall hear and decide matters assigned to the judge"). The trial court in this case failed in that obligation by losing jurisdiction over the motion. That it did so accidentally or inadvertently does not make it any more fair to the defendant or impact public confidence any less. I do not read the majority to contend otherwise. Rather, while acknowledging that it was error for the trial court not to rule on the pending motion, the majority concludes that this error was neither so obvious nor so harmful as to constitute "manifest injustice." I do not agree.

As to whether the error was "so clear" or "so obvious," the majority appears to conclude that the error falls in a sweet spot (or, for the defendant, a not so sweet spot). Namely, we are told that the rule that the trial court loses jurisdiction upon sentencing is a "generally accepted" and "well established" jurisdictional and common-law doctrine. Yet, because of what the majority considers to have been "anomalies in this court's case law" that "may have resulted in some confusion," the error was not sufficiently clear to fall within the clear error test. This is a needle I have a hard time threading.

The majority's view might be persuasive if, when the trial court sentenced the defendant without ruling on his timely new trial motion, it had sorted among what the majority finds to be anomalous or confusing precedents. But, like the parties, the trial court missed altogether the "loss of jurisdiction" issue, sorting among the precedents only after the horse had left the jurisdictional barn. Thus, the trial court's error was not in determining whether *Luzietti* applied, as opposed to *Wilson* and *Myers*, but rather in not considering the import of the "well established" rule *at all*, at a time when it still could have ruled on the defendant's motion, as it was obliged to, including by putting off the sentencing proceeding or by pronouncing sentence and staying its execution. Whether this error actually affected the court's subject matter jurisdiction was perhaps arguably not clear or obvious, but the fact that the court should have, but did not, rule on the new trial motion prior to sentencing *was* clear and obvious. By not doing so, the defendant was denied an opportunity to seek a new trial pursuant to Practice Book § 42-53. This seems to me exactly the kind of error that the plain error doctrine was designed to address.

As to the second prong of the plain error test, although I agree with the majority that unlike the situation for defendants in structural error cases, the defendant in the present case was required to establish harm that amounts to manifest injustice, I disagree that the defendant failed to do so. The majority concludes that

there is no "manifest injustice" because the alleged prosecutorial improprieties detailed in the motion for a new trial are the same improprieties that this court concludes lack merit on direct appeal. What the record in this appeal lacks, however, is the ruling of the trial judge who presided over the defendant's trial. Today's majority essentially declares that that ruling was unnecessary. I do not agree, and I would conclude that the defendant was harmed by not having his motion for a new trial reviewed first by the trial judge who supervised his criminal trial, notwithstanding our conclusion today affirming the judgment of the trial court on the record presented. See footnote 1 of this concurring and dissenting opinion.

It is well established that a trial judge is in a better position to assess any error or prejudice that occurred during trial. It is the trial judge who viewed the evidence, heard the witnesses' testimony and counsel's arguments, and viewed the jury's reaction. Motions for a new trial provide the best remedy when claims of prosecutorial impropriety are alleged because they permit the trial court to rely on its personal experience at trial, during which the court may have observed the effect and prejudice, if any, the impropriety had on the jury. It is because of this firsthand experience that trial courts are afforded discretion in deciding motions for a new trial, which we then review for abuse of that discretion. See *State* v. *Myers*, 290 Conn. 278, 288–89, 963 A.2d 11 (2009). Thus, the manifest injustice in this case is not necessarily that the defendant would have prevailed on his claims, but rather that the parties *and this court* have lost the benefit of the trial court's considered views of his claims, especially in light of the fact that the trial judge deemed the defendant's motion for a new trial "colorable . . . ." Even if the trial court would have denied the motion, we would have had the benefit of a record of its reasons for doing so, which potentially could impact our review of the claims on direct appeal.

It is the significance of the trial court's discretion that distinguishes this case from the case cited by the majority, *State* v. *Myers*, supra, 290 Conn. 278. In *Myers*, defense counsel waived a trial on part B of the information, which charged the defendant as a repeat offender, and, thus, the trial court did not "accord him a hearing regarding his jeopardy as a repeat offender and . . . make a finding regarding his status as a repeat offender in accordance with Practice Book § 42-2 . . . ." (Internal quotation marks omitted.) Id., 285. The Appellate Court in *Myers* had held that the trial court's failure to abide by § 42-2 was plain error because "[a] court commits plain error when it fails to implement properly the mandatory provisions of clearly applicable rules of practice." (Internal quotation marks omitted.) Id. This court reversed in part the judgment of the Appellate Court, explaining that "apart from the trial court's failure to comply strictly with the applicable rule of prac-

tice, which we do not condone, the defendant has failed to raise any doubt with respect to the validity of his prior conviction. A trial court's failure to comply with a rule of criminal procedure, without more, is insufficient to require reversal for plain error." (Emphasis omitted; footnote omitted.) Id., 290.

The present case is distinguishable from *Myers* because the defendant in *Myers* did not request that the trial court exercise its discretion. The sole issue in *Myers* was the legal question of whether the defendant could waive a hearing on the part B information and bypass Practice Book § 42-2. In the present case, the trial court was required to exercise its discretion to determine whether to grant a new trial on the basis of whether the alleged prosecutorial improprieties prejudiced the defendant.

At great risk of being unduly practical, and understanding that the defendant must demonstrate prejudice, I fail to understand just what the state and the majority fear here. If the trial court denies the defendant's motion, the court has vindicated the defendant's right to a ruling on his timely motion, respected its authority and obligation to rule on that motion, and prevented collateral litigation on the failure of the court to rule on the motion and the failure of the parties to recognize their oversight. If the trial court grants the motion for a new trial, there is no need for this appeal, unless the state seeks and obtains permission to appeal. See General Statutes § 54-96 (state cannot appeal in criminal case unless permitted to do so by trial court).

I further part company with the majority on the issue of manifest injustice in that the majority already has concluded that the trial court could not under any circumstances have granted the motion as a matter of discretion. I reject that notion. It was the trial judge who observed the questions the prosecutor posed, the witnesses' conduct and the jury's reaction, and expressed his own frustration with the prosecutor. See *State* v. *McCoy*, supra, 171 Conn. App. 316. I do not agree that our affirmance of the judgment on the prosecutorial impropriety issues raised; see part I of the majority opinion; means that the trial court's own ruling on those issues was preordained or ineluctable. It is not possible to say that the court would have abused its discretion if the record had been augmented by the court's views and the court had *granted* the motion for a new trial on the basis of the issues the defendant sought to raise in that motion. And if the trial court had granted the motion, there could be no doubt that the defendant had been so harmed as to amount to manifest injustice.

Nor can I agree with the state that the defendant has suffered no manifest injustice because he can always raise his claims in a petition for a new trial or for a writ of habeas corpus. As the state well knows, the burdens of demonstrating prejudice are much steeper

in such collateral proceedings. See footnote 12 of this concurring and dissenting opinion. In addition, the defendant would suffer prejudice by virtue of any delay he would endure if he were entitled to prevail, and would have prevailed, on his timely filed motion. In fact, being consigned to having to raise his claims in a collateral proceeding because of the trial court's accidental and inadvertent loss of jurisdiction *is* the manifestation of prejudice that in my view warrants invoking the plain error doctrine. Accordingly, because the error in this case was clear and harmful, I would reverse the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court to rule on the motion for a new trial.[16]

I therefore respectfully concur in part and dissent in part.

[1] I concur, however, with the conclusion in part I of the majority's opinion that the Appellate Court properly concluded that the alleged prosecutorial improprieties detailed in the motion for a new trial did not deprive the defendant of a fair trial.

[2] Neither *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001), *State* v. *Myers*, 242 Conn. 125, 698 A.2d 823 (1997), *State* v. *Luzietti*, supra, 230 Conn. 427, nor *State* v. *Wilson*, 199 Conn. 417, 436, 513 A.2d 620 (1986), refer to the rule as one of subject matter jurisdiction, but rather merely of "jurisdiction." Although this court has stated on numerous occasions that a criminal trial court's jurisdiction ends with the sentencing of the defendant, this rule just as easily can be explained as implicating the court's personal jurisdiction over the defendant, rather than subject matter jurisdiction over the case. In fact, although not relied on by the majority, one of the justifications advanced in support of the rule is that upon execution of sentence, the custody of the defendant is transferred from the court to the Commissioner of Correction, which arguably implicates the court's jurisdiction over the defendant's person. See *State* v. *Luzietti*, supra, 432. Of course, if this rule does not implicate subject matter jurisdiction, the parties could have waived any objection to the court's ruling on the motion. Compare General Statutes § 52-212a (providing that civil judgments may be opened or set aside only within four months following judgment, but further providing that "parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court").

[3] "As this court previously has observed, '[t]he common law is generally described as those principles, usage, and rules of action applicable to the government and security of persons and property which do not rest for their authority [on] any express and positive declaration of the will of the legislature.' . . . *Moore* v. *McNamara*, 201 Conn. 16, 24, 513 A.2d 660 (1986); see also *Western Union Telegraph Co.* v. *Call Publishing Co.*, 181 U.S. 92, 102, 21 S. Ct. 561, 45 L. Ed. 765 (1901) ('[a]s distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts recognizing, affirming and enforcing such usages and customs')." *State* v. *Courchesne*, 296 Conn. 622, 674 n.36, 998 A.2d 1 (2010).

[4] Although the majority is correct that the strong presumption in favor of jurisdiction must be considered in light of the common-law rule at issue; *State* v. *Ramos*, supra, 306 Conn. 134–35; it is this court that defines the scope of this rule. See part I C of this concurring and dissenting opinion.

[5] To be clear, my view that the trial court was mistaken that it lost jurisdiction concerns only the grounds raised in the defendant's timely filed motion for a new trial. I do not suggest that the defendant can bootstrap his claim of nondisclosure of evidence pursuant to *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which was untimely raised for the first time in his amended motion for a new trial three months after sentencing, to his timely filed motion for a new trial. Thus, in my view, although the trial court should retain jurisdiction to decide the timely filed motion for a new trial, the defendant's untimely amendment to the motion, filed after sentencing, would not be properly before the court.

[6] The court's inherent authority to develop and adapt the common law is consistent with the nature of the common law: "The common law is not static, but is a dynamic and growing thing and its rules arise from the application of reason to the changing conditions of society. . . . [T]his flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law . . . ." (Citations omitted; internal quotation marks omitted.) *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 127, 448 A.2d 1317 (1982).

[7] The defendant was found guilty on March 11, 2013. Because the five day deadline for filing his motion for a new trial fell on a Saturday, the defendant had until Monday, March 18, 2013, to file his motion, and he filed it on that day. See Practice Book § 7-17. He was sentenced on June 6, 2013. Under the four month rule, the trial court had until at least October 6, 2013, to open or modify the judgment. The trial court denied the motion for a new trial on September 20, 2013, within the time frame of the four month rule.

[8] The state argues that Practice Book § 42-54 limits a court's ability to entertain such a motion to only prior to sentencing. I disagree. Section 42-54 does not limit the time frame in which the court may rule on a motion for a new trial; it limits only the time within which such a motion may be "made." Once a defendant timely makes a motion for a new trial, nothing in the language of § 42-54 prevents a court from ruling on the motion after sentencing.

[9] To the extent that *Myers* does not rely on the four month rule, but rather recognizes its own exception to the common-law rule at issue, see part I C of this concurring and dissenting opinion.

[10] It is noteworthy that in *Dayton*, in which the state claimed to have improperly nolled the case, *it was the state* that argued that both the four month rule and the mutual mistake exception should apply equally to civil and criminal cases. See *State* v. *Dayton*, supra, 176 Conn. App. 862 n.7, 871 n.13.

[11] The majority admits that the policy of double jeopardy that originally animated the general rule no longer applies.

[12] To prevail on a motion for a new trial, the defendant must establish that "an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial." (Internal quotation marks omitted.) *State* v. *Smith*, 313 Conn. 325, 348, 96 A.3d 1238 (2014). "[A] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds." (Internal quotation marks omitted.) Id., 347–48. Thus, the standard for a motion for a new trial already creates a difficult hurdle to overcome. This difficultly is exacerbated in this case if the defendant is required to bring his claim by means of a petition for a writ of habeas corpus, which requires him to establish prejudice; *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); or by means of a petition for a new trial, which requires him to establish that there will be "a different result in a new trial"; *Jones* v. *State*, 328 Conn. 84, 92, 177 A.3d 534 (2018); or by means of direct appeal, in which the appellate courts are deprived of the trial court's views on the matter, especially in light of the fact that it is unknown if the trial court would have granted the "colorable" motion in the present case.

[13] The majority attempts to distinguish the "useful mechanism" of staying the defendant's sentence from the exception that I suggest our case law permits, or should permit, on the ground that it "is expressly rooted in case law . . . ." Rather than distinguish, the history of staying proceedings bolsters my view that this court has inherent power to develop the common law, including through the creation of exceptions to a common-law jurisdictional rule. A court's power to stay the execution of a sentence derives not from a statute or a constitutional provision. It is an inherent common-law power: "The common law has long recognized a court's ability to stay the execution of a criminal sentence in a variety of contexts. . . . [T]he power to stay the execution of a sentence, in whole or in part, in a criminal case, is inherent in every court having final jurisdiction in such cases, unless otherwise provided by statute. . . . Absent an abuse of discretion or a limiting statute, therefore, a trial court has the ability to stay the execution of a criminal sentence in order to fulfill its duty to implement the penalties dictated by the legislature for criminal offenses and to promote the ends of justice." (Citations omitted; internal quotation marks omitted.) *Copeland* v. *Warden*, 225 Conn. 46, 49–50, 621 A.2d 1311 (1993) (permitting court to stay execution of sentence until after defendant finished psychiatric treatment); see also *State* v. *Leak*, 297 Conn. 524, 537, 998 A.2d 1182 (2010) (trial court had inherent common-law power to impose on defendant consec-

utive terms of commitment following insanity acquittals of multiple offenses by staying execution of one term of commitment until expiration of another term of commitment).

It is true that the exception I suggest involves the trial court fulfilling its duty to decide a motion for a new trial after the sentence has been executed, as in *Myers*, while the mechanism of staying the execution of the sentence occurs after sentencing but before execution. This distinction, however, does not justify the majority's conclusion that the court loses subject matter jurisdiction under the former circumstance but not the latter. Under both circumstances, the defendant has been sentenced. The only difference is whether the defendant is in the custody of the Department of Correction. Such a difference appears to implicate personal jurisdiction, not subject matter jurisdiction. See footnote 2 of this concurring and dissenting opinion. As such, both mechanisms are the product of the common law, which this court develops pursuant to its inherent authority.

[14] The majority makes a very fair point in questioning whether the exception that I suggest exists (or should exist) can extend "in perpetuity." I have the same question about the mechanism that the majority says should have been employed. Can the trial court stay the defendant's sentence "in perpetuity" while considering the new trial motion? I imagine that at some point under either scenario an appellate court could be called on to exercise its supervisory authority over the administration of justice to compel a ruling on the motion. See Practice Book §§ 60-2 ("[t]he supervision and control of the proceedings shall be in the court having appellate jurisdiction from the time the appellate matter is filed, *or earlier*, if appropriate" [emphasis added]) and 66-6 (permitting this court to modify trial court order concerning stay upon motion for review).

[15] The state objects even to our considering this issue as plain error, although it admits that this court may raise an issue as plain error on its own. See Practice Book 60-5. I do not find it a particularly close question that this case involves an exceptional circumstance that justifies raising plain error on our own, i.e., the "unintentional" or "inadvertent" loss of jurisdiction over a motion that is the last step before the trial court was to sentence the defendant to sixty years imprisonment. Given this unique and exceptional circumstance, I see very little risk that significant violence will befall our plain error jurisprudence if we invoke the doctrine in this case.

Additionally, even accepting, as I do, the state's representation before the trial court that its agreement "to continue the motion for briefing and argument" was "not meant to deceive either the defendant or the [trial] court," I fail to understand how the state's position opposing plain error review contributes to " 'public confidence in the judicial proceedings.' " *State* v. *McClain*, supra, 324 Conn. 812. Like the trial court and the defendant, the state quite apparently overlooked controlling law, leading to a loss of the defendant's opportunity to press his "colorable" new trial motion. This collective inadvertence, I believe, quite clearly "affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McClain*, supra, 812.

[16] Although I have been unable to find a case with a procedural posture identical to that of the present case, in other unique cases in which the trial court failed to rule on a motion or failed to conduct a hearing, this court has remanded the case to the trial court to rule on the motion or conduct the hearing and then, based on the outcome of those further proceedings, either this court or the trial court has been permitted to vacate the sentence and order a new trial. See *State* v. *Pollitt*, 199 Conn. 399, 416–17, 508 A.2d 1 (1986) (remanding case to trial court to conduct evidentiary hearing in order to have sufficient record to determine claims on appeal, but waiting on whether to vacate conviction and order new trial until court has full record to decide claims); see also *Tough* v. *Ives*, 159 Conn. 605, 607, 268 A.2d 371 (1970) (in case in which trial court refused to rule on motion to set aside verdict, case was "remanded to the Superior Court with direction that it be referred to the judge who presided at the trial, and he is directed forthwith to either grant or deny the March 15, 1968, motion to set aside the verdict and thereafter, forthwith, in accordance with the result of his decision on that motion, to order either that the verdict be set aside or that judgment be rendered on the verdict"); *Alderman* v. *Hanover Ins. Group*, 155 Conn. 585, 590, 236 A.2d 462 (1967) ("the proper judgment in . . . a situation [where the court failed to decide an issue] is to remand the case in order that the court may decide the issue [unless the question is one of law]").

The idea that this court cannot fix a problem of the judiciary's own making

makes no sense. This court has the ability to craft a remand order as justice requires, even in the face of unique circumstances. See *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, 197 Conn. 698, 717, 501 A.2d 377 (1985) ("[i]n the interests of justice, we have the power to remand a case for further proceedings even in the absence of reversible error by the trial court"). In fact, I have no doubt that under any of several provisions of our rules of practice the majority could have returned this matter to the trial court for its views on the motion for a new trial, in aid of our review of the prosecutorial impropriety claim. See Practice Book §§ 60-1 ("[t]he design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any appellate matter"); 60-3 ("for . . . good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules"); 60-5 ("[i]f the court deems it necessary to the proper disposition of the cause, it may order a further articulation of the basis of the trial court's factual findings or decision"); 64-1 (a) (requiring trial court to file a memorandum of decision if it has failed to do so).

---