******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL F.*
(AC 43485)
(AC 43504)

Bright, C. J., and Elgo and Sheldon, Js.

*Syllabus*

The defendant, who had previously been convicted on pleas of guilty of various crimes in three separate cases, filed motions to open each of the disposed criminal cases in 2019. The defendant had been sentenced in 2010 and in 2013 in the underlying criminal cases. The trial court rendered judgments dismissing the motions to open, from which the defendant filed two appeals to this court. *Held*:

1. The trial court correctly determined that it lacked jurisdiction to consider the defendant's motions to open; under the well established common-law rule, the court lost jurisdiction following the imposition of the defendant's sentence in each of the underlying criminal cases.

2. The defendant's claim that the trial court abused its discretion when it failed to retain jurisdiction to determine the motions to open was without merit: insofar as the defendant claimed that the court had discretion to exercise jurisdiction in the present case, a court's subject matter jurisdiction is not a matter of discretion, and, as a matter of law, there simply was no jurisdiction for the court to retain; moreover, insofar as the defendant suggested that an allegation of ineffective assistance of counsel provided a trial court with continuing jurisdiction over a criminal case, this court recently rejected that proposition in *State* v. *Jin* (179 Conn. App. 185).

3. The trial court did not violate the defendant's right to due process when it dismissed his motions to open without providing him notice and an opportunity to be heard on the issue of jurisdiction, the procedures used being adequate to prevent the erroneous deprivation of the defendant's private interest in exercising his right to redress his grievances: given the defendant's claims before the trial court, there was no risk of an erroneous deprivation of any liberty interest the defendant possessed by the court proceeding as it did, the court having explained to the defendant that his motions to open had been filed in disposed cases and the court lacked jurisdiction to consider them, and the defendant acknowledged the court's ruling, did not request to be heard further and instead had a discussion with the court about the appointment of appellate counsel; moreover, by exercising his statutory right to appeal from the court's judgments, and because this court's standard of review is plenary, the defendant was afforded a meaningful opportunity to make his assertions and objections to any contrary arguments made by the state regarding the jurisdictional issue.

Argued September 23—officially released November 9, 2021

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of assault in the third degree and reckless endangerment in the first degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the defendant was presented to the court, *Hadden, J.*, on a plea of guilty; judgment of guilty; information, in the second case, charging the defendant with the crimes of criminal violation of a protective order and criminal trespass in the first degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the defendant was presented to the court, *Licari, J.*, on a plea of guilty to criminal violation of a protective order; judgment of

guilty; and substitute information, in the third case, charging the defendant with the crimes of assault in the third degree and conspiracy to commit assault in the second degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the defendant was presented to the court, *Kamp, J.*, on a plea of guilty to assault in the third degree; judgment of guilty; thereafter, the court, *Cradle, J.*, dismissed the defendant's motion to open in each case, and the defendant filed two appeals to this court, which consolidated the appeals. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant in both appeals (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom were *Melissa Patterson*, senior assistant state's attorney, and, on the brief, *Patrick Griffin*, state's attorney, and *Alexandra Arroyo*, special deputy assistant state's attorney, for the appellee in both appeals (state).

*Opinion*

BRIGHT, C. J. In these consolidated appeals, the defendant, Michael F., appeals from the judgments of the trial court dismissing for lack of subject matter jurisdiction his motions to open three disposed criminal cases. On appeal, the defendant claims that the court (1) improperly concluded that it lacked jurisdiction to consider the motions, (2) abused its discretion in failing to retain jurisdiction to rule on the motions, and (3) violated his right to due process when it dismissed the motions without providing him notice and an opportunity to be heard on the issue of jurisdiction. We affirm the judgments of the trial court.

The following procedural history is relevant to the defendant's claims. On April 25, 2008, in Docket No. CR-06-0062422-S (2008 case), the defendant was convicted of two counts of assault in the third degree, and the trial court sentenced him to a total effective sentence of eleven months of imprisonment, execution fully suspended, with two years of conditional discharge. In June, 2009, the defendant was arrested in connection with a physical altercation with the mother of his child and charged with assault in the third degree and reckless endangerment in the first degree in Docket No. CR-09-0093196-S (2009 case). The trial court, *Damiani, J.*, entered a protective order prohibiting the defendant from having any contact with the victim.

On October 16, 2009, pursuant to a plea agreement, the defendant pleaded guilty under the *Alford* doctrine[1] to one count each of assault in the third degree and reckless endangerment in the first degree in the 2009 case. On the same date, the defendant admitted to violating his conditional discharge stemming from the 2008 case, and the court released him on a written promise to appear in each case, conditioned on the defendant entering and completing the Evolve program.[2] The court explained that, if the defendant successfully completed the program, the state would recommend that he receive a fully suspended sentence. If, however, the defendant failed to abide by the conditions of his release or to complete the Evolve program, he would be exposed to a total effective sentence of two years of imprisonment.

Prior to completing the Evolve program, the defendant was arrested and charged with criminal violation of a protective order and criminal trespass in the first degree in Docket No. CR-10-0101345-S (2010 case). Because the new arrest would violate the plea agreement in the 2009 case and expose the defendant to two years of imprisonment, the court held a hearing on March 23, 2010, pursuant to *State* v. *Stevens*, 278 Conn. 1, 11–13, 895 A.2d 771 (2006), to determine whether probable cause existed to support his arrest. At the conclusion of the hearing, the court found that the

defendant violated the conditions of his plea agreement and continued the matter for sentencing.

On May 21, 2010, the court, *Licari, J.*, terminated the defendant's conditional discharge in the 2008 case and, in the 2009 case, imposed a total effective sentence of two years of imprisonment, execution fully suspended, with two years of conditional discharge. On that same date, in the 2010 case, the defendant pleaded guilty, under the *Alford* doctrine, to criminal violation of a protective order, and the court sentenced him to an unconditional discharge.

In July, 2013, the defendant was arrested and charged with assault in the third degree and conspiracy to commit assault in the second degree in Docket No. CR-13-0139979-S (2013 case). On November 15, 2013, the defendant pleaded guilty under the *Alford* doctrine to assault in the third degree, and the court, *Kamp, J.*, sentenced him to one year imprisonment, execution fully suspended, with two years of probation. On December 3, 2014, the court, *Keegan, J.*, terminated the defendant's probation early.

In January, 2019, more than five years after his probation was terminated in the 2013 case and more than seven years after his sentences had been served in the 2008, 2009, and 2010 cases, the defendant filed motions to open the 2009, 2010, and 2013 disposed cases, alleging, inter alia, ineffective assistance of counsel in each of those cases due to an alleged conflict of interest. On January 11, 2019, the court, *Cradle, J.*, denied the motions on the papers without stating the reasons for its decisions.

The defendant thereafter filed applications for waiver of fees, costs and expenses and appointment of counsel on appeal in each of the three cases. On June 3, 2019, Judge Cradle held a hearing on the applications at which she addressed the defendant as follows: "[Your motions] were motions to open disposed cases. And it looks like on the papers this court denied the motion[s] . . . . The court checked the box that the motion is denied. I just want to note for the record . . . the reason why I denied the motions is because . . . I did not feel that this court had jurisdiction to hear these specific motions, okay. So technically, the matter should have been dismissed by the court, not denied. So I'll vacate my prior order[s] denying [them] and dismiss them for lack of jurisdiction."

The court then asked the defendant questions about his fee waiver application. After granting the fee waiver, the court returned to the motions to open and stated: "The prior orders [are] vacated. The . . . matter should have been dismissed for lack of jurisdiction as opposed to just stating it was denied, okay. That was the basis for the court's denial of the motion. But in retrospect it should have been a dismissal, okay." The

defendant responded: "Yes, thank you." The court then had a further discussion with the defendant about the appointment of counsel and granted the defendant's application in the 2013 case only and appointed counsel to represent him on appeal. On June 7, 2019, the court held another hearing to address the two applications filed by the defendant in the 2009 and 2010 cases, which the court had overlooked at the previous hearing. The court granted the applications and appointed counsel to represent him on appeal in those cases as well. These appeals followed.[3]

## I

We begin by setting forth our standard of review. Although we review a court's ruling on a motion to open a judgment for abuse of discretion; see *Disturco* v. *Gates in New Canaan, LLC*, 204 Conn. App. 526, 532, 253 A.3d 1033 (2021); the dispositive issue in this appeal is whether the court properly concluded that it lacked jurisdiction over the defendant's motions to open. The issue of subject matter jurisdiction presents a question of law over which our review is plenary. See *State* v. *Smith*, 150 Conn. App. 623, 634, 92 A.3d 975, cert. denied, 314 Conn. 904, 99 A.3d 1169 (2014).

On appeal, the defendant claims that the court improperly determined that it lacked jurisdiction to consider his motions to open. The state argues that the trial court properly determined that it lacked subject matter jurisdiction over the motions because the defendant had been sentenced already in each of the underlying criminal cases and there is no applicable constitutional or statutory grant of jurisdiction that permits the court to retain or exercise jurisdiction over the defendant's judgments of conviction after he has been sentenced. We agree with the state.

"The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence. . . .

"[In other words] the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . This principle is memorialized in Practice Book § 39-26, which provides: A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial

authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [Practice Book §] 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed. . . .

"Thus, although this court has recognized the general principle that there is a strong presumption in favor of jurisdiction . . . in criminal cases, this principle is considered in light of the common-law rule that, once a defendant's sentence has begun . . . th[e] court may no longer take any action affecting a defendant's sentence unless it *expressly* has been authorized to act." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 133–35, 49 A.3d 197 (2012); cf. *State* v. *Waterman*, 264 Conn. 484, 491, 825 A.2d 63 (2003) ("[i]t is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment *before the sentence has been executed*" (emphasis added; internal quotation marks omitted)).

The defendant attempts to avoid this clear rule of law by arguing that there is a presumption in favor of courts exercising jurisdiction and by analogizing to statutes and rules of practice, including those applying solely to civil proceedings, which are simply inapplicable to the defendant's motions to open in these cases. Recently, in *State* v. *McCoy*, 331 Conn. 561, 578–84, 206 A.3d 725 (2019), our Supreme Court rejected arguments similar to those raised by the defendant. In particular, the court reviewed the history of the common-law rule limiting the trial court's jurisdiction in criminal cases and noted two anomalies in its previous decisions. Specifically, in *State* v. *Wilson*, 199 Conn. 417, 437, 513 A.2d 620 (1986), our Supreme Court suggested that the civil rule allowing trial courts to open or set aside civil judgments within four months of judgment applies to criminal cases. In addition, in *State* v. *Myers*, 242 Conn. 125, 136, 698 A.2d 823 (1997), the court, citing its decision in *Wilson*, held that "the trial court retained jurisdiction to entertain the motion for a new trial after sentencing because it could have opened the judgment." (Footnote omitted.) See *State* v. *McCoy*, supra, 331 Conn. 583.

In *McCoy*, the court explained that, "given the long and consistent history of our courts applying the traditional rule that jurisdiction is lost upon the execution of a sentence, we cannot conclude that *Myers* reflects a retreat from that common-law rule. Instead, we acknowledge that *Myers* and *Wilson* are anomalies in this court's case law, and we take this opportunity to clarify and reiterate, as we have consistently done since *Myers*, that a trial court loses jurisdiction once the defendant's sentence is executed, unless there is a constitutional or legislative grant of authority. . . . Thus, any reliance on *Myers* by the defendant to extend the jurisdiction of the trial court beyond the point at which

his sentence was executed is misplaced."[4] (Citation omitted.) *State* v. *McCoy*, supra, 331 Conn. 586–87. The court in *McCoy* reaffirmed in the strongest terms possible that in the absence of a specific constitutional or statutory grant of jurisdiction a trial court loses subject matter jurisdiction once a defendant is sentenced. Id.

In the present case, the defendant cannot point to such a specific grant of jurisdiction because none exists. Thus, under the well established common-law rule, the court lost jurisdiction after it sentenced the defendant on May 21, 2010, in the 2009 and 2010 cases, and on November 13, 2013, in the 2013 case. See id., 586–87; see also *State* v. *Jin*, 179 Conn. App. 185, 193–94, 179 A.3d 266 (2018) ("We iterate that following the imposition of the defendant's sentence on January 12, 2016, the court was divested of jurisdiction. Accordingly, it was without the power to consider the defendant's claim of ineffective assistance of counsel that was raised in the . . . motion to open.").

Accordingly, we conclude that the court properly determined that it lacked jurisdiction to consider the defendant's motions to open because the court lost jurisdiction following the imposition of the defendant's sentence in each of the underlying criminal cases.

## II

The defendant also claims that the court "abused its discretion when it failed to retain jurisdiction to determine the motions to open . . . on their merits." He argues that "when an action came before the [court] . . . alleging that a just defense existed, in whole or part, that his counsel had a conflict of interest, resulting in the denial of the defendant's constitutional right to counsel, the [court] had the statutory authority not only to retain jurisdiction, but to consider the motions on the merits and to grant a new trial." This claim is without merit.

Insofar as the defendant claims that the court had discretion to exercise jurisdiction in the present case, we note that a court's subject matter jurisdiction is not a matter of discretion. See *Mirabal* v. *Mirabal*, 30 Conn. App. 821, 825, 622 A.2d 1037 (1993) ("[s]ubject matter jurisdiction . . . cannot be conferred on the court by waiver or consent of the parties, nor can the court confer jurisdiction on itself"). For the reasons set forth in part I of this opinion, as a matter of law, there simply was no jurisdiction for the court to "retain." Similarly, insofar as the defendant suggests that an allegation of ineffective assistance of counsel provides a trial court with continuing jurisdiction over a criminal case, this court recently has rejected this proposition. See *State* v. *Jin*, supra, 179 Conn. App. 192–94 (concluding that trial court lacked jurisdiction to consider defendant's ineffective assistance of counsel claim raised in motion to open because court divested of jurisdiction following

imposition of sentence).

## III

Finally, we address the defendant's claim that his right to due process was violated when the trial court dismissed his motions to open without providing him notice and an opportunity to be heard on the issue of jurisdiction. The defendant argues that he "has a vested liberty interest in his right to redress his grievances" pursuant to the first amendment to the United States constitution and article first, §§ 10 and 14, of the Connecticut constitution.[5] He argues that "[t]he right to due process encompassed the right to make his assertions that the court did have jurisdiction to hear his motions, and to make his objections to any contrary arguments made by the state or by the court" before the court ruled on the motions.

In response, the state argues that the defendant had an opportunity to address the issue of subject matter jurisdiction at the hearing on his fee waiver applications on June 3, 2019, when the court, after noting that his motions were directed to previously disposed cases, vacated its rulings denying the motions to open and dismissed the motions for lack of subject matter jurisdiction. Alternatively, the state argues that the defendant has failed to demonstrate that he was entitled to any further process than that already afforded to him.

In his reply brief, the defendant argues that he was not provided a meaningful opportunity to be heard at the June 3, 2019 hearing because he was not notified that the jurisdictional issue would be addressed at that time and because the hearing occurred only after the court already had rendered its decision on his motions. We conclude that the defendant's right to due process was not violated in the present case.

"We resolve due process claims pursuant to *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). . . . Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Rather, the [s]pecific dictates of due process generally require consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [state's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. . . .

"When determining what procedures are constitutionally required, we must bear in mind that [t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and [an] opportunity to meet it. . . .

The elements of notice and opportunity, however, do not require a judicial-type hearing in all circumstances. . . . So long as the procedure afforded adequately protects the individual interests at stake, there is no reason to impose substantially greater burdens on the state under the guise of due process." (Citations omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 134 Conn. App. 405, 411–12, 40 A.3d 336 (2012), appeal dismissed, 312 Conn. 215, 91 A.3d 898 (2014).

In the present case, given the defendant's claims before the trial court, there was no risk of an erroneous deprivation of any liberty interest the defendant possessed by the court proceeding as it did. At the June 3, 2019 hearing, the court explained to the defendant that his motions to open had been filed in disposed cases, the court lacked jurisdiction to consider the motions, and the court therefore was vacating its prior order denying the motions and was dismissing them instead. The defendant acknowledged the court's ruling, did not request to be heard further, and instead had a discussion with the court about the appointment of appellate counsel. Given that the court clearly was without jurisdiction to hear the defendant's motions, we cannot say that the court's interaction with the defendant deprived him of due process. Furthermore, by exercising his statutory right to appeal from the court's judgments, and because our standard of review is plenary, the defendant has been afforded a meaningful opportunity "to make his assertions that the court did have jurisdiction to hear his motions, and to make his objections to any contrary arguments made by the state" regarding the jurisdictional issue.

Accordingly, we conclude that the procedures used in the present case have been adequate to prevent the erroneous deprivation of the defendant's private interest in exercising his right to redress his grievances.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished *as if he were guilty* to avoid the risk of proceeding to trial. . . . The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." (Emphasis in original; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 824 n.4, 189 A.3d 1215 (2018).

[2] The Evolve program is a behavior modification program for male offenders of domestic violence. See *State* v. *Brown*, 145 Conn. App. 174, 177, 75 A.3d 713, cert. denied, 310 Conn. 936, 79 A.3d 890 (2013).

[3] On October 10, 2019, the defendant filed his first appeal, Docket No. AC 43485, challenging the judgment dismissing his motion to open in the 2013 case. On October 16, 2019, the defendant filed a second appeal, Docket No.

AC 43504, challenging the judgments dismissing his motions to open in the 2009 and 2010 cases. Thereafter, this court granted the defendant's motion to consolidate the appeals for briefing and argument.

[4] Although he acknowledges our Supreme Court's decision in *McCoy*, the defendant nevertheless cites *State* v. *Wilson*, supra, 199 Conn. 417, and holds it out as support for his contention that "in certain circumstances, even after a defendant's sentence begins, or ends, the court does retain jurisdiction." In doing so, the defendant ignores the fact that, in *McCoy*, the Supreme Court labeled *Wilson* an anomaly.

[5] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

Article first, § 14, of the Connecticut constitution provides: "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

―――――――――――――――――